## SMITH *v.* GRANGE MUTUAL FIRE INSURANCE CO. OF MICHIGAN.

1. INSURANCE—NOTICE—DEFENSES NOT RELIED ON IN REFUSAL TO PAY LOSS ARE WAIVED.

When a loss under an insurance policy has occurred and payment refused for reasons stated, good faith requires that the company shall fully apprise the insured of all of the defenses it intends to rely upon, and its failure to do so is, in legal effect, a waiver, and estops it from maintaining any defenses to an action on the policy other than those of which it has thus given notice.[1]

2. SAME—INVALIDITY OF POLICY—WAIVER—ESTOPPEL.

Although the insured, in a criminal action in which she was accused of burning the insured buildings, claimed that the policy was void because not properly signed by the insurer's president, and her acquittal was directed partly by reason of said fact, where the insurer did not question the validity of the policy until after action thereon was commenced, it is estopped from relying on what occurred in the criminal case.[2]

3. SAME — MORTGAGE FORECLOSURE BY PUBLICATION—NOTICE—INSTRUCTION.

Although mortgage foreclosure by publication was begun at the time the mortgagor applied for insurance on the mortgaged buildings, the trial judge, in an action on the policy, properly instructed the jury to disregard the proof of said foreclosure unless they were satisfied that plaintiff had knowledge of that fact at the time of the application or issuance of the policy.[3]

4. SAME—MORTGAGOR HAS INSURABLE INTEREST EVEN AFTER COMMENCEMENT OF FORECLOSURE PROCEEDINGS.

The mortgagor had an insurable interest in the mortgaged buildings even after foreclosure proceedings were begun, and her right to collect the insurance inured as soon as the fire occurred, where it occurred before the premises were sold.[4]

---

[1]Fire Insurance, 26 C. J. § 417; [2]Id., 26 C. J. § 417; [3]Id., 26 C. J. § 737; [4]Id., 26 C. J. § 9.

On experimental evidence as affected by similarity or dissimilarity of conditions, see note in 8 A. L. R. 18.

5. SAME — INSURABLE INTEREST OF MORTGAGEE CEASED ON SALE UNDER FORECLOSURE—PARTIES.

The interest of the mortgagee in the policy ceased to exist when the property was sold for the amount due her, and where it had been sold at the time action on the policy was commenced she was not a party in interest.[5]

6. EVIDENCE—EXPERIMENTS—ADMISSIBILITY.

The admissibility of evidence of experiments depends upon whether it tends to enlighten the jury and enable them more intelligently to consider the issues presented.[6]

7. SAME—DISCRETION OF COURT.

Where a witness for the insurer, to establish its defense that plaintiff herself had set the fire, testified that about two o'clock in the morning he had seen her carrying goods from the house, the admission of testimony, in rebuttal, as to experiments of witnesses to determine whether, on such a night as the one in question, there could be identification of a person at a certain distance, was within the discretion of the trial court, on a showing that there was sufficient similarity of conditions.[7]

Error to Isabella; Lamb (Fred S.), J., presiding. Submitted January 26, 1926. (Docket No. 88.) Decided March 20, 1926.

Assumpsit by Evelyn S. Smith against the Grange Mutual Fire Insurance Company of Michigan on a policy of insurance. Judgment for plaintiff. Defendant brings error. Affirmed.

*William T. Yeo,* for appellant.

*Kinnane & Leibrand* (*Frank H. Dusenbury,* of counsel), for appellee.

SHARPE, J. On May 1, 1922, plaintiff applied to a local agent, Anderson A. Miner, the secretary of the Luther Grange, for insurance in the defendant company on the buildings on her farm property in Osceola county in the sum of $3,350 on a blank pro-

[6]Fire Insurance, 26 C. J. § 12; [6]Evidence, 22 C. J. § 843; [7]Id., 22 C. J. § 844.

vided by defendant for that purpose.   The requisite fees were paid.   The application and fees were sent to W. M. Coon at Roscommon, the secretary of the defendant company.   A policy was issued by Mr. Coon on May 5th, and mailed to E. B. Follett, the president of the company, at Hale, for his signature thereto.   The policy was afterwards received by plaintiff, the signature of the president appearing thereon as follows: "E. B. Follett, President E. F."   A part of the property insured was destroyed by fire on the night of May 21, 1922.   Secretary Coon, on being notified, visited the premises, and made some investigation as to the cause thereof.   The attention of the State fire marshal's department was called to the fire, and, after investigation, a complaint was made and warrant issued, charging plaintiff with the burning of the buildings with intent to defraud the insurance company.   On trial in the circuit court she was acquitted by the jury by direction of the court.   Much of the evidence submitted and the ruling of the court in that case were put in in this case and appear in the record.   Proofs of loss were furnished by plaintiff.   There were efforts at adjustment and arbitration, pursuant to the terms of the policy, an award made which was set aside in a suit brought for that purpose, and, finally, this action was brought in August, 1924, to recover on the policy.   Defendant requested a verdict, which was denied.   The plaintiff had verdict and judgment for $3,196.66.   Defendant's motion for a new trial, thereafter made, was overruled, and the case is now before us on writ of error.

1. On the trial of the criminal case, counsel for the accused insisted that the prosecution had failed to show the issuance of a legal policy of insurance, in that it did not appear that the president of the company had signed the policy.   The lack of such proof

was one of the reasons stated by the trial court for directing the acquittal of the accused.

It is now urged by defendant, and its request for a directed verdict was based thereon, that plaintiff is estopped by the contention of her counsel and the ruling of the court in the criminal case from claiming that the policy was legally issued and the defendant liable thereon. The criminal trial ended on September 25, 1922. Five days thereafter, Secretary Coon, in answer to a request for payment, wrote plaintiff's attorney that he was not "able to agree as to what she should have from this company on account of the burning of her buildings." Plaintiff's counsel thereupon wrote him: "I presume the next step is the appointment of an adjusting board." The secretary replied, naming the company's adjuster. An adjustment was had, and an appeal taken to the arbitration board provided for in the policy. As before stated, the award made was set aside. It does not appear that in any of these proceedings any claim was made by the defendant that the policy was not legally issued. They were taken on the assumption that a valid policy had been issued to plaintiff. The only dispute was as to the liability of the defendant thereon. Had the defendant taken the position at the close of the criminal trial that no enforceable policy had been issued by it, a different question would be presented.

This court has many times held, and it must be accepted as the settled law of this State, that, when a loss under an insurance policy has occurred and payment refused for reasons stated good faith requires that the company shall fully apprise the insured of all of the defenses it intends to rely upon, and its failure to do so is, in legal effect, a waiver, and estops it from maintaining any defenses to an action on the policy other than those of which it has thus given

notice.   *Castner* v. *Insurance Co.,* 50 Mich. 273;
*Richards* v. *Insurance Co.,* 60 Mich. 420; *Towle* v.
*Insurance Co.,* 91 Mich. 219; *Douville* v. *Insurance Co.,*
113 Mich. 158; *Reimold* v. *Insurance Co.,* 162 Mich.
69.

It does not appear that the defendant ever questioned
the validity of the policy until it filed its plea and notice
in this case.   The majority of the adjusting board
denied liability for the reason: "The circumstances
render the company not liable for loss."   The appeal
board concluded that "the preponderance of evidence
shows that the said company is not liable on the policy
of insurance issued to her (plaintiff) by said company
and we hereby so decide and determine."

In our opinion, the trial court was clearly right in
instructing the jury that the policy constituted "a
contract binding upon both parties notwithstanding
the action in the criminal case."

2. On January 13, 1914, plaintiff and her then hus-
band executed a mortgage on the farm for $800, pay-
able in five years.   She sought, unsuccessfully, to
obtain a loan in 1921 to pay this mortgage.   On April
21, 1922, foreclosure by publication was begun, the
notice being published in the Luther Observer.   Sale
was made to Esther Weiss, the mortgagee, for the
amount then due, and on October 2, 1923, she became
the owner of the premises.   The court instructed the
jury:

"You will disregard the proof of the mortgage fore-
closure unless you are satisfied that the plaintiff had
knowledge of the fact at the time of the application
or issuance of the policy of insurance.  *  *  *  If
notice or the matter of the foreclosure of this mortgage
was not called to the attention of the plaintiff at the
time this insurance was taken or at the time the loss
occurred then the defendant would be in no position
to raise that question now."

There was a colloquy between the court and counsel

during the charge as to the effect of plaintiff's knowledge that foreclosure had been begun on the validity of the policy, and counsel for defendant then expressed the opinion that the materiality of such proceedings rested on defendant's claim that, as plaintiff had been deprived of title thereby, and was not the owner of the buildings at the time suit was begun, she could not recover for the loss.

Plaintiff had an insurable interest in the property at the time the policy was issued and the foreclosure proceeding begun.     Her right to collect the insurance inured as soon as the fire occurred.     The interest of the mortgagee in the policy ceased to exist when the property sold for the amount due her.     She was not a party in interest at the time the suit was brought. We discover no error in the charge relative to the mortgage or the foreclosure proceedings thereunder.

3. The principal defense was that plaintiff, herself, set the fire which burned the buildings.     There was no direct evidence that she did so.     Defendant called a neighbor, August Leitz, who testified that about 2 o'clock on the night of the fire he was in his pasture field near plaintiff's land, investigating the cause of some disturbance to his horses, and looking over the fence, he saw plaintiff "about five rods southeast from the house," and that she was "carrying out stuff there, bed clothing and other clothes."     "There was no moon shining, but it was a bright, nice, light night; there were stars shining but no moon;" that he went home, and about 5 o'clock was awakened by the fire.

In rebuttal, the plaintiff called four witnesses, who were permitted to testify, over defendant's objections, that they had made observation as to the distance at which a person could be observed and identified in the nighttime.     The effect of their testimony was that one might distinguish whether the object seen was a man or a woman at a distance of from 2 to 5 rods,

but that a person could not be identified at a greater distance than one rod.

The admissibility of evidence of experiments depends upon whether it "tends to enlighten the jury and enable them more intelligently to consider the issues presented." 22 C. J. p. 755. Defendant's witness had testified positively that he saw and recognized plaintiff at her home, and that she was removing property therefrom. Its counsel relied on this and other circumstantial proof to establish the fact that she caused the fire. The ability of the witness to identify the plaintiff from where he stood was an issue that the jury must determine. Their personal experiences might cause them to differ about it. Had another person stood by the witness, or at the same distance from the person at the house, with like opportunity for observation, his testimony as to whether the person could be identified at such a distance would clearly have been admissible. The question to be determined by the court was, Were the conditions under which plaintiff's witnesses made their observations sufficiently similar to those at the time defendant's witness saw the person near the house to justify the trial court in admitting their testimony?

Defendant's witness testified, as before stated: "There was no moon shining, but it was a bright, nice, light night; there were stars shining but no moon." One of plaintiff's witnesses testified that it was a "bright starlight night, when there was no moon shining." Another said it was "A starlight night. * * * No, the moon wasn't shining very much, I don't think. The sky was not cloudy at all." Another said it was "a fair night, it was a moonlight night," and the other said it "was a fair night and full moon." These observations were not made at the same place. Two of the witnesses testified that they made their observations when the chancery case was

on trial at Hersey; that they went outside the town and away from its lights. The other two made their observations while the trial of this case was in progress at Mt. Pleasant, and said that they went out in the country, "outside of the lights of the town."

The possibility of seeing from a certain point is not presented. The question is, Can there be identification of a person at a certain distance on such a night as defendant's witness made his observation? It may be conceded that the atmospheric conditions on no two nights are exactly similar. The stars undoubtedly appear to be brighter on some occasions. This is also true as to the daytime. The rays of the sun and the absence of clouds may permit a person to observe objects or identify individuals at a much greater distance one day than another. In our opinion, there was sufficient similarity in the conditions under which the experimental observations were made to support the discretionary ruling of the trial court in admitting such testimony. We cannot say, as a matter of law, that it would not aid rather than confuse the jury in determining whether the identification of the plaintiff by the witness was possible under the conditions stated by him. The great weight of authority supports this holding.

"It is not necessary, however, that the conditions should be exactly identical, but a reasonable or substantial similarity is sufficient, and the lack of exact identity affects only the weight and not the competency of the evidence, provided always that there is such a degree of similarity that evidence of the experiments made will accomplish the desideratum of assisting the jury to an intelligent consideration of the issues of fact presented." 22 C. J. p. 759.

"A frequent use of experiments is for the purpose of ascertaining whether a witness, by reason of darkness, atmospheric conditions, or intervening objects, could have seen from a certain spot an act or occurrence." 4 Chamberlayne, Evidence, § 3170.

"This similarity need not be precise in every detail. It need include only those circumstances or conditions which might conceivably have some influence in affecting the result in question."    1 Wigmore on Evidence, § 442.

"The facts need not be exactly or in every particular similar; if they are sufficiently similar to accomplish the purpose of assisting the jury to intelligently consider the issue of fact presented in regard to the special point in controversy, the evidence is admissible." *Atlanta, etc., R. Co.* v. *Hudson,* 2 Ga. App. 352, 354 (58 S. E. 500).

In *Johnson* v. *Railroad Co.,* 80 Kan. 456, 464 (103 Pac. 90), wherein tests were offered as to the distance at which the smoke and steam from a locomotive could be seen in a cut near a crossing, the court said:

"Atmospheric conditions, the coal used, the time of its application to the fire and other circumstances would affect the weight of such testimony, but would not make it incompetent."

In 8 A. L. R. 18 there is an exhaustive note under the heading, "Experimental evidence as affected by similarity or dissimilarity of conditions."    The cases in which this subject has been considered by appellate courts are cited and reviewed in it.    It is so accessible to the profession that we but refer to it.

"A determination of such a question is not disturbable on review unless manifestly wrong."    *Harper* v. *Holcomb,* 146 Wis. 183 (130 N. W. 1128).

See, also, *People* v. *Auerbach,* 176 Mich. 23, 45 (Ann. Cas. 1915B, 557).

The other questions discussed have been carefully considered, but, in our opinion, disclose no reversible error.

The judgment is affirmed.

BIRD, C. J., and STEERE, FELLOWS, CLARK, and MCDONALD, JJ., concurred.    WIEST, J., concurred in the result.    SNOW, J., did not sit.