### MORITZ *v.* HORSMAN.

1. DESCENT AND DISTRIBUTION—ADOPTED CHILD OF INTESTATE'S BROTHER.

    The adopted child of an intestate's brother is not an heir of the intestate and is not legally entitled to inherit.

2. EQUITY—MISTAKE OF LAW—EVIDENCE.

    Denial of recovery on account of mistake of law is made because proof of mistake of law, unlike proof of mistake of fact, is not objectively ascertainable since it must be found in the mind of the party making payment and subjective evidence of what was in a person's mind is not considered a satisfactory means of determining the real motive for payment.

3. SAME—MISTAKE—INEQUITABLE CONDUCT.

    Equity will grant relief where there has been a mistake as to antecedent and existing private legal rights or where the mistake has been induced by defendant's inequitable conduct.

---

Restitution for satisfaction of a nonexistent obligation, see Restatement, Restitution, §§ 45, 46; change of circumstances as a defense, see § 69; rights of intended beneficiary against payee unjustly enriched, § 126.

4. Same—Mistake of Law.

Where a person is ignorant or mistaken with respect to his own antecedent and existing private legal rights, interests or estate, and enters into some transaction, the legal scope and operation of which he correctly apprehends and understands, for the purpose of affecting such assumed rights, interests or estates, equity will grant its relief, defensive or affirmative, treating the mistake as analogous to, if not identical with, a mistake of fact.

5. Executors and Administrators—Mistake—Payment.

Since an administrator intends to distribute assets of an estate only to those legally entitled thereto, payment to a supposed heir at law would seem to have been made solely because of mistake where no other motive for payment suggests itself.

6. Payment—Mistake of Law—Evidence.

Proof that payment was made because of mistake of law, like proof of payment because of mistake of fact, may rest on objective evidence of the surrounding facts.

7. Executors and Administrators—Personalty—Title.

Upon the decease of an intestate the title to his personal property remains in abeyance until the appointment of an administrator when it vests in the latter for the purpose of taking charge of the property and distributing it to those who, after due inquiry, are found to have valid claims against the estate.

8. Same—Mistake—Unjust Enrichment.

The mistake of a fiduciary in making payment to intestate's brother's foster son as an heir, whether of fact or of law, should not be held to impair the right of the heirs at law to recover their just claims from the one unjustly enriched at their expense, where there is no fraud and it is shown that the mistake was shared in by all.

9. Equity—Unjust Enrichment—Mistake.

No one should be allowed to enrich himself unjustly at the expense of another by reason of an innocent mistake of law or fact entertained by both parties.

10. Same—Restitution—Mistake—Change of Circumstances.

Where payment has been made to a defendant as the result of an honest mistake of law on the part of all parties concerned, the right to restitution is terminated or diminished where circumstances have so changed that it would be inequitable to require the other party to make full restitution.

11. SAME—MISTAKE OF LAW—RESTITUTION IN PART.

> Where it appears defendant, the foster son of intestate's brother, received $13,200.42 from the estate as a supposed heir by reason of an honest mistake of law entertained by all parties upwards of three years before commencement of suit by two of the three heirs at law, and that defendant married shortly before receiving the major distribution of the estate, invested $3,000 in down payment on a house and furniture, has been out of work, wife has suffered a prolonged illness, and he does not appear to have more than $7,500 left, plaintiffs are entitled to $5,000.

Appeal from Wayne; Webster (Arthur), J. Submitted April 14, 1943. (Docket No. 64, Calendar No. 42,261.) Decided June 7, 1943.

Bill by Edith Moritz against Edward Horsman, Jr., and others for money decree, for amount defendant wrongfully received from the estate of John Horsman, deceased. Edna Clements as an intervening plaintiff filed a bill of complaint against defendants for similar relief. Decree for plaintiff and intervening plaintiff. Defendant Edward Horsman, Jr., appeals. Modified and affirmed.

*Toy & Newman,* for plaintiff.

*Douglas B. Crane,* for intervening plaintiff.

*Wiley, Streeter & Meyer,* for defendant Horsman.

BUTZEL, J. In *Moritz v. Wayne Circuit Judge,* 291 Mich. 190, we affirmed the order of the circuit court denying delayed appeal from an order of the probate court allowing the final account of Thomas B. Horsman, general administrator of the estate of John Horsman, deceased. Edward Horsman is the adopted son of Edward Horsman, Sr. John died

intestate leaving as his heirs his brother Thomas B. Horsman and the children of a deceased brother, Edward Horsman, Sr. In the John Horsman estate, beginning with the petitions of Thomas B. Horsman for general administration and of Edith Moritz, a daughter of the deceased brother Edward Horsman, Sr., for special administration and throughout the entire probate proceedings, the probate court was informed that the children of Edward Horsman consisted of Edith Moritz, Edna Clements and Pearl I. Snowhook, daughters, and Edward Horsman, Jr., a son. The latter, however, was an adopted son and as such was not an heir of his Uncle John. *Van Derlyn* v. *Mack,* 137 Mich. 146 (66 L. R. A. 437, 109 Am. St. Rep. 669, 4 Ann. Cas. 879). The three daughters of Edward Horsman, Sr., regarded Edward, Jr., as a natural brother, although they knew he was an adopted son. They signed receipts and approved of the distribution of the personal property in the estate of which Edward, Jr., received a one-eighth share, the same as if he were a natural son of his deceased foster father. Only a few days before the expiration of a year in which a delayed appeal could be applied for, the sisters learned that their brother by adoption was not an heir and Mrs. Moritz filed a motion for a delayed appeal, which was denied on the ground that it might subject the administrator and his surety to a liability for which, as far as the record showed, the sisters were at least partly responsible. *Moritz* v. *Wayne Circuit Judge, supra.* We stated in our opinion that our holding was without prejudice to any rights the sisters might have against Edward, Jr. Two months after we rendered our opinion, Edith Moritz, plaintiff, and Edna Clements as an intervening plaintiff, two of the sisters, filed bills in the instant case against

Edward, Jr., and asked for restitution of the sums he had received and to which, as a stranger to the blood, he was not legally entitled and which had been taken from the shares of the real heirs at law. Mrs. Snowhook, the third sister, made no claim, so that if the two sisters are entitled to relief, they can recover only two-thirds of any sums for which defendant is liable. In our holding in *Moritz* v. *Wayne Circuit Judge, supra,* we added the saving clause so as not to foreclose any rights plaintiffs might have. The question of the right to recover was not briefed or considered, so that it is now presented to us for the first time.

In bills filed by plaintiff and intervening plaintiff, fraud on the part of defendant was alleged but not proved. The record satisfies us that an honest mistake was made by the attorneys who no longer represent the heirs. No fraud of any kind was shown. The order of the probate court became *res judicata.* It is conceded that Edward Horsman, Jr., defendant, was an adopted son of his foster father, and not being a blood relation of the deceased uncle, he was not legally entitled to inherit. He was a stranger in the eyes of the law and any amounts paid to him came out of the shares of the three sisters in the estate. In the hearing in the instant case, the trial judge held that the probate orders and distribution were *res judicata,* but that the two sisters were entitled to two-thirds of $13,200.42, the amount that defendant had received through a mistake in being included as one of the heirs. The judge based his decision upon the fact that defendant had been unjustly enriched by receiving an amount to which he had absolutely no legal claim whatsoever.

Two questions are presented, which we will discuss seriatim: First, May plaintiffs recover the amounts received by defendant through a mistake of

law on the theory of unjust enrichment where there is no fraud nor any inequitable conduct by defendant in inducing the mistake? It is well nigh impossible to reconcile the many cases allowing or denying recovery caused through a mistake of law. The rule denying recovery is based historically on the maxim that everyone is presumed to know the law. In the enforcement of the criminal law, this maxim expresses a necessary rule of conduct. Were we to adopt the principle so often used in civil cases that the presumption disappears when there is evidence to the contrary, there is ample testimony to show that none of the parties nor their former attorneys knew the law with respect to the right of an adopted son to inherit from an uncle who died intestate. The more acceptable theory for denying recovery on account of mistake of law is that proof of mistake of law, unlike proof of mistake of fact, is not objectively ascertainable because it must be found in the mind of the party making payment. The subjective evidence of what was in a person's mind is not considered a satisfactory means of determining the real motive for payment. See note, 45 Harvard Law Review, p. 336. In this State, the rule has been laid down that relief will be granted where there has been a mistake as to antecedent and existing private legal rights or where the mistake has been induced by defendant's inequitable conduct. See *Barr* v. *Payne,* 298 Mich. 85; *Renard* v. *Clink,* 91 Mich. 1 (30 Am. St. Rep. 458). In recent years textwriters and a few of the courts have come to the conclusion that relief for mistake of law should be given as readily as that for mistake of fact. 5 Williston, Contracts (Rev. Ed.), § 1581, p. 4415; Restatement of Law of Restitution, p. 179; *Peterson* v. *First National Bank of Ceylon,* 162 Minn. 369 (203 N. W. 53, 42 A. L. R. 1185); *Reggio* v. *Warren,* 207

Mass. 525 (93 N. E. 805, 32 L. R. A. [N. S.] 340, 20
Ann. Cas. 1244). In the recent case of *Barr* v.
*Payne, supra,* although we denied recovery because
of certain other facts in the case, we quoted with
approval from *Renard* v. *Clink, supra,* which held
that where a person is "ignorant or mistaken with
respect to his own antecedent and existing private
legal rights, interests, or estate, and enters into
some transaction, the legal scope and operation of
which he correctly apprehends and understands, for
the purpose of affecting such assumed rights, in-
terests, or estates, equity will grant its relief, de-
fensive or affirmative, treating the mistake as an-
alogous to, if not identical with, a mistake of fact."

We believe that such a case is here presented and
that the reason underlying the general rule permits
recovery. Since an administrator intends to dis-
tribute the assets of an estate only to those legally
entitled thereto, payment to a supposed heir at law
would seem to have been made solely because of mis-
take. No other motive for payment suggests itself.
Proof that payment was made because of mistake
of law, like proof of payment because of mistake
of fact, may in many cases rest on objective evidence
of the surrounding facts. It does so in the instant
case. The closeness of the question is demonstrated
by the Restatement of the Law of Restitution. In
section 45 (p. 184) it is stated that a person induced
thereto solely by mistake of law who has conferred
a benefit upon another to satisfy in whole or in part
an honest claim of the other to the performance
given, is not entitled to restitution. The reporter's
note refers, among others, to *In re Welton's Estate,*
141 Misc. 674 (253 N. Y. Supp. 128), where an ad-
ministrator was not permitted to recover from next
of kin to whom he had made payment solely because
of mistake of law. See, also, *Strafford Savings Bank*

v. *Church*, 69 N. H. 582 (44 Atl. 105); *Scott* v. *Ford*, 45 Ore. 531 (78 Pac. 742, 80 Pac. 899, 68 L. R. A. 469); *Shriver* v. *Garrison*, 30 W. Va. 456 (4 S. E. 660). The Restatement, § 126, distinguishes, however, between the rights of the administrator and of the heirs. Section 126, comment c (p. 516), provides that where a fiduciary in the distribution of assets held for others pays money to a person whom he mistakenly believes to be a beneficiary, the real beneficiary is entitled to restitution from the transferee, and the following illustration is given: A, administrator of B's estate, pays money out of the assets of the estate to C whom both by mistake of law believe to be B's next of kin. In fact, D is B's next of kin. D is entitled to restitution from C. Upon the decease of intestate the title to his personal property remains in abeyance until the appointment of an administrator when it vests in the latter for the purpose of taking charge of the property and distributing it to those who after due inquiry are found to have valid claims against the estate. The mistake of this fiduciary, whether of fact or of law, should not be held to impair the right of the heirs at law to recover their just claims from one unjustly enriched at their expense, where there is no fraud and it is shown that the mistake was shared in by all. While no general rule can be given to apply to all cases, where through a mutual mistake there has been an unjust enrichment, as stated in *Reggio* v. *Warren, supra* (p. 534):

"The important question was not whether the mistake was one of law or fact, but whether the particular mistake was such as a court of equity will correct, and this depends upon whether the case falls within the fundamental principle of equity that no one shall be allowed to enrich himself unjustly at the expense of another by reason of an innocent mistake of law or fact entertained by both parties."

The second question is, whether, sitting as a court of equity, we should allow full recovery where through a mutual mistake of law, the party innocently has changed his position materially during the period of delay and laches of the claimants. John Horsman died November 3, 1936; within a week administration was sought. It was not until February 20, 1940, that the bill of complaint was filed in the instant case. Ten thousand dollars of the amount received by defendant was turned over to him in government bonds in accordance with a court order entered on June 4, 1937. His testimony, not contradicted, indicates that he was entirely innocent of any wrongdoing. He believed himself a legal heir, having lived with his parents by adoption from the time of infancy until he attained his majority. He showed that he married shortly before he received the $10,000 in bonds from the first and larger distribution of the estate, that he invested $3,000 to make a payment on the purchase price for a house and for furniture, that he had been out of work for a while, that his wife had been very ill for over a year and a half and that he has only $5,000 of the bonds left, that possibly if he "went into it he could find something more."

The Restatement of the Law of Restitution, § 69 (p. 284), states that the right to restitution is terminated or *diminished* if circumstances have so changed that it would be inequitable to require the other party to make full restitution. We believe that this is a proper principle to apply in a case where all parties have made an innocent mistake of law. It would be inequitable to subject defendant under the circumstances to a liability for the entire amount received. Five thousand dollars is left in bonds. It is impossible to determine with exactitude what other property defendant has. It looks as if he had an additional $2,500 that might be re-

alized from property. This would make $7,500. Defendant should pay two-thirds of this amount to plaintiffs, or the $5,000 he still has on hand.

Decree may be entered modifying the decree of the trial court and holding defendant liable to pay the sum of $5,000 to plaintiffs. Thomas B. Horsman and his surety were added as claimants, but no claim is made against them. The decree as modified is affirmed, with costs to plaintiffs.

Boyles, C. J., and Chandler, North, Starr, Wiest, Bushnell, and Sharpe, JJ., concurred.