LOWRY v. COLLECTOR OF INTERNAL REVENUE.

1. INTERNAL REVENUE—OWNERSHIP OF INCOME-PRODUCING PROPERTY.
   The liability for payment of income taxes under the Federal revenue act is not necessarily dependent on the ownership of the property by which the income is produced, the issue under that act being—who earned the income.

2. EQUITY—MISTAKE.
   Where parties, with knowledge of the facts, and without any inequitable incidents, have made an agreement or other instrument as they intended it should be, and the writing expresses

---

REFERENCES FOR POINTS IN HEADNOTES
[2] 9 Am. Jur., Cancellation of Instruments, § 36.
[3] 9 Am. Jur., Cancellation of Instruments, § 37.
[4] 46 Am. Jur., Restitution and Unjust Enrichment.
[5] Judicial avoidance of gift or other transfer of property motivated by unsuccessful purpose of escaping or reducing tax. 174 A.L.R. 1352.

the transaction as it was understood and designed to be made, equity will not allow a defense, or grant a reformation or rescission, although one of the parties may have mistaken or misconceived its legal meaning, scope or effect.

3. Same—Mistake as to Antecedent and Existing Private Legal Rights.

Where a person is ignorant or mistaken with respect to his own antecedent and existing private legal rights, interests or estates, and enters into some transaction, the legal scope and operation of which he correctly apprehends and understands, for the purpose of affecting such assumed rights, interests or estates, equity will grant its relief, defensive or affirmative, treating the mistake as analogous to, if not identical with, a mistake of fact.

4. Same—Mistake of Law or Fact—Unjust Enrichment.

It is a fundamental principle of equity that no one shall be allowed to enrich himself unjustly at the expense of another by reason of an innocent mistake of law or fact entertained by both parties.

5. Same—Husband's Gift to Wife—Build an Estate—Minimization of Income Tax—Limited Partnership—Mistake.

Where evidence shows that principal purpose of plaintiff husband in making gift to his wife of half of his interest in a corporation which later became a limited partnership, was to enable her to build up an estate and that any effect it might have on amount of income tax for which he was liable was not substantial and of merely secondary importance, he would not be entitled to have gift set aside for alleged mistake of law when it subsequently became apparent that he was liable for income tax on their combined interest in the partnership.

Appeal from Ottawa; Miles (Fred T.), J. Submitted June 8, 1948. (Docket No. 22, Calendar No. 44,052.) Decided October 4, 1948.

Bill by O. William Lowry against Giles Kavanagh, Collector of Internal Revenue for the Collection District of Michigan, Sara H. Lowry and others to set aside a gift made to defendant Lowry. Bill dismissed as to defendant Collector of Internal Revenue. Decree for defendants. Plaintiff appeals. Affirmed.

*Bidwell, Schmidt & Martin,* for plaintiff.

*Warner, Norcross & Judd,* for defendant Lowry.

CARR, J.   Plaintiff brought suit in circuit court to set aside a gift of corporate stock made by him to his wife, the defendant Sara H. Lowry, in May, 1937, and for incidental relief by way of an accounting. The bill of complaint, which was filed December 12, 1946, alleges that the parties intended that the shares of stock should become the sole and separate property of the donee, that she should have all rights of ownership and control over them, and the incidental right to receive the income therefrom or from any other property into which the shares might be converted.   It was further alleged in the bill that "plaintiff also intended by said gift that Sara H. Lowry would be subject to all the liabilities of ownership of said shares or other property into which said shares might be converted for taxes levied against said shares or levied upon the income from said shares or other property into which said shares might be converted, and that plaintiff would be freed from such liabilities."   Plaintiff claims that he made the gift in question believing that the result desired by him would follow the gift, that such belief on his part was erroneous as was demonstrated by subsequent events, that there was actually a mutual mistake on the part of himself and Mrs. Lowry, and that he is entitled to have the gift set aside for that reason.   Following a hearing in the trial court, a decree was entered denying the relief sought, and plaintiff has appealed.

The parties have entered into a stipulation of facts from which it appears that the Charles R. Sligh Company was organized in 1933 with a total capitalization of $18,000, represented by 1,800 shares of stock of the par value of $10 each.   Subsequently

plaintiff became the owner of one-half of such stock and defendant Charles R. Sligh of the other half. Mrs. Lowry and Mrs. Sligh were made directors in January, 1937. On May 24th, following, plaintiff assigned to his wife 450 shares of his stock, which was duly transferred to her name. At the same time plaintiff gave Mrs. Lowry a letter which read in part:

"This stock is a gift from me to you and is now your property to do with as you choose. There are no restrictions upon your rights as stockholder in any particular and you are entitled to receive any dividends which may be paid on the stock from this day forth."

In July, 1938, plaintiff filed with the department of internal revenue a gift tax return disclosing the transaction, and Mrs. Lowry also filed a report stating that the stock had a value of $22,500. On December 1, 1938, Mr. Sligh made a similar gift of one half of his stock in the corporation to Mrs. Sligh. During the years 1937 and 1938, Mrs. Lowry received cash dividends on the stock transferred to her by plaintiff. She filed income tax returns with the Federal department of internal revenue, showing such dividends, and paid the taxes thereon.

In December, 1938, the stockholders decided to dissolve the corporation and distribute its assets. Thereupon the corporate personal property was conveyed to the stockholders in equal shares. The real estate was deeded to plaintiff and Mr. Sligh as "general partners in Charles R. Sligh Company, a limited partnership." The corporate existence was then legally terminated and a limited partnership was formed by Mr. and Mrs. Lowry and Mr. and Mrs. Sligh to which each conveyed an undivided interest in the tangible assets received by them on the liquidation of the corporation. Articles of copart-

nership were executed, and a certificate was filed in the office of the county clerk of Ottawa county showing that plaintiff and Mr. Sligh were general partners and that Mrs. Lowry and Mrs. Sligh were limited partners. The operation of the business which the corporation had carried on was continued.

In the annual income tax returns filed by Mrs. Lowry with the Federal department of internal revenue she reported all income received by her from the partnership and paid the taxes thereon. In 1942, the department of internal revenue came to the conclusion that such income was taxable to plaintiff, and the latter was so advised by written communication. The reasons for such determination were stated as follows:

"The share of partnership income from Charles R. Sligh Company reported by your wife, Sara H. Lowry, is held taxable to you for Federal income tax purposes inasmuch as she rendered no services and contributed no capital, as such, to the business. It further appears that in the close family group you retained dominion, control and administration of the partnership business to the extent of one-half interest therein."

The action of the department was sustained by the tax court of the United States. *Lowry* v. *Commissioner of Internal Revenue,* 3 T.C. 730. On appeal, the circuit court of appeals of the sixth circuit affirmed the decision of the tax court. *Lowry* v. *Commissioner of Internal Revenue* (C.C.A.), 154 Fed. (2d) 448. In reaching such conclusion the court followed the decision of the supreme court in *Commissioner of Internal Revenue* v. *Tower,* 327 U.S. 280 (66 Sup. Ct. 532, 90 L. Ed. 670, 164 A.L.R. 1135), saying in part:

"The situation herein presented is closely analogous to that disclosed in the *Tower Case.* The wives

here performed no services whatever. No capital not available for use in the business was brought into the business as the result of the formation of the partnership. As found by the tax court, there was no interruption in the business, which continued just as before under the management of Lowry and Sligh. As before, the taxpayers created the income; the only difference was that part of the income was diverted to the wives. The result was 'a mere paper reallocation of income among the family members.' (327 U.S. 292 [66 Sup. Ct. 538, 90 L. Ed. 678].) *Commissioner of Internal Revenue* v. *Tower, supra.* The fact that the gifts of stock and the partnership were valid under Michigan law, as held in the *Tower Case,* is immaterial here."

Petition for writ of certiorari was denied by the supreme court, 329 U.S. 725 (67 Sup. Ct. 73, 91 L. Ed. 628).

The supreme court of the United States in its decision in the *Tower Case, supra,* indicated clearly that liability for payment of income taxes under the Federal revenue act is not necessarily dependent on the ownership of the property by which the income is produced. The following language from the opinion is significant:

"Respondent contends that the partnership arrangement here in question would have been valid under Michigan law and argues that the tax court should consequently have held it valid for tax purposes also. But the tax court in making a final authoritative finding on the question whether this was a real partnership is not governed by how Michigan law might treat the same circumstances for purposes of State law. Thus, Michigan could and might decide that the stock-transfer here was sufficient under State law to pass title to the wife, so that in the event of her death it would pass to whatever members of her family would be entitled to receive it under Michigan's law of descent and distribution. But

Michigan cannot, by its decisions and laws governing questions over which it has final say, also decide issues of Federal tax law and thus hamper the effective enforcement of a valid Federal tax levied against earned income. The contention was rejected in *Lucas* v. *Earl,* 281 U.S. 111 (50 Sup. Ct. 241, 74 L. Ed. 731).   *   *   *

"Respondent urges further that the tax court erroneously concluded that the gift was ineffective for tax purposes because it was conditional and therefore incomplete. The government defends the tax court's conclusion. We do not find it necessary to decide this issue. The question here is not simply who actually owned a share of the capital attributed to the wife on the partnership books. A person may be taxed on the profits earned from property, where he neither owns nor controls it. *Lucas* v. *Earl, supra.* The issue is who earned the income and that issue depends on whether this husband and wife really intended to carry on business as a partnership. Those issues cannot be decided simply by looking at a single step in a complicated transaction. To decide who worked for, otherwise created or controlled the income, all steps in the process of earning the profits must be taken into consideration. See *Commissioner of Internal Revenue* v. *Court Holding Co.,* 324 U.S. 331, 334 (65 Sup. Ct. 707, 89 L. Ed. 981). Of course, the question of legal ownership of the capital purportedly contributed by a wife will frequently throw light on the broader question of whether an alleged partnership is real or pretended. But here the tax court's findings were supported by a sufficient number of other factors in the transaction, so that we need not decide whether its holding as to the completeness of the gift was correct. *Cf. Helvering* v. *Hallock,* 309 U.S. 106, 117, 118 (60 Sup. Ct. 444, 84 L. Ed. 604, 125 A.L.R. 1368); *Burnet* v. *Wells,* 289 U.S. 670, 677 (53 Sup. Ct. 761, 77 L. Ed. 1349)."

The collector of internal revenue for the collection district of Michigan was joined as a party de-

fendant in the case at bar on the theory that the determination of the property rights here involved between plaintiff and Mrs. Lowry may "affect their respective income tax liabilities," and that in consequence the collector was a proper party to the suit. The trial court thought otherwise and dismissed the case as to such defendant, on motion, by an order entered January 18, 1947, prior to trial. No appeal from such order was taken. Mr. and Mrs. Sligh were joined as parties defendant on the ground that if the interest of Mrs. Lowry in the partnership is eliminated their rights might be affected thereby. It appears from the record that as of June 1, 1944, the limited partnership formed on the dissolution of the corporation was changed to a general partnership which is now conducting the business.

The question presented on the record before us is whether plaintiff is entitled to the relief sought by him for the reasons alleged in his bill of complaint. It is his claim in substance that there was a mutual mistake as to existing and antecedent legal rights because of his erroneous belief that Mrs. Lowry would become solely liable for the payment of Federal taxes on dividends or other profits accruing on the shares, or from other property into which such shares might be converted. Reliance is placed on the decision of this Court in *Renard* v. *Clink*, 91 Mich. 1 (30 Am. St. Rep. 458). There plaintiff refused a tender of the amount due on a mortgage under the belief that she had obtained title to the property covered by the mortgage by purchase at a prior foreclosure sale. In such belief she was mistaken. Her suit to foreclose in chancery was dismissed on motion because of the refusal of the tender and she appealed. In setting aside the order of dismissal, this Court said:

"Where parties, with knowledge of the facts, and without any inequitable incidents, have made an

agreement or other instrument as they intended it should be, and the writing expresses the transaction as it was understood and designed to be made, equity will not allow a defense, or grant a reformation or rescission, although one of the parties may have mistaken or misconceived its legal meaning, scope or effect. *Martin* v. *Hamlin,* 18 Mich. 354 (100 Am. Dec. 181); *Lapp* v. *Lapp,* 43 Mich. 287. But where a person is ignorant or mistaken with respect to his own antecedent and existing private legal rights, interests or estates, and enters into some transaction, the legal scope and operation of which he correctly apprehends and understands, for the purpose of affecting such assumed rights, interests or estates, equity will grant its relief, defensive or affirmative, treating the mistake as analogous to, if not identical with, a mistake of fact."

Plaintiff cites, also, *Walter* v. *Walter,* 297 Mich. 26, and *Moritz* v. *Horsman,* 305 Mich. 627 (147 A.L.R. 117). In the *Walter Case* plaintiff sought cancellation of a mortgage on the ground that it had been fraudulently secured. The proofs established that defendant, who was plaintiff's son, claimed an interest in certain real estate through inheritance from his mother and induced plaintiff to recognize such claim by stating that he had had counsel on it. Plaintiff thereupon executed to defendant a mortgage on the property, which defendant subsequently undertook to foreclose. This Court affirmed the decree of the trial court granting cancellation of the note and mortgage, on the ground that they were given without consideration and solely because of the wrongful claim of the defendant. It is apparent that in this case the mistake, though having reference to the legal rights of the parties in the property on which the mortgage was given, was the result of fraudulent misrepresentations on the part of the defendant.

In *Moritz* v. *Horsman, supra,* the nieces and heirs at law of a decedent approved the distribution of a

part of the personal property of the estate to the defendant, who was the adopted son of the brother of decedent. Such approval was given in the belief that defendant was entitled to inherit from the adoptive father's brother. On learning of the mistake, suit was brought to recover the value of the personal property that defendant had received. Relief was granted on the theory of unjust enrichment. In reaching such conclusion the Court quoted with approval from *Reggio* v. *Warren,* 207 Mass. 525 (93 N.E. 805, 32 L.R.A.[N.S.] 340, 20 Ann. Cas. 1244), as follows:

" 'The important question was not whether the mistake was one of law or fact, but whether the particular mistake was such as a court of equity will correct, and this depends upon whether the case falls within the fundamental principle of equity that no one shall be allowed to enrich himself unjustly at the expense of another by reason of an innocent mistake of law or fact entertained by both parties.' "

Attention is also called to the recent decision of this Court in *Stone* v. *Stone,* 319 Mich. 194 (174 A.L.R. 1349). There the plaintiffs, who were husband and wife, each owning an undivided half interest in a manufacturing business, transferred a one-fourth interest to each of their two children, ostensibly making such children partners with plaintiffs in the business. It was conceded that this was done for the sole purpose of minimizing income taxes and that the plaintiffs had been advised by a competent tax consultant that such result could be accomplished by the transfer to the children. Subsequently the decision by the United States supreme court in *Commissioner of Internal Revenue* v. *Tower, supra,* was rendered. In accordance therewith the commissioner of internal revenue decided that the entire income of the partnership was taxable to the husband and father.

Thereupon plaintiffs filed suit to set aside the transfer of partnership assets to their children. The trial court granted relief, and this Court affirmed the decree, on the ground of mutual mistake "as to the antecedent and existing legal rights and duties of the parties in regard to the payment of income taxes under the requirements of Federal law and the power of the donors to affect such rights and duties by the transfers in question."

As noted, the sole reason for making the transfer to the defendants in the *Stone Case* was to minimize Federal income taxes on the profits derived from the operation of the partnership business. Likewise in each of the other cases above considered, which are cited and relied on by plaintiff in the case at bar, the transaction sought to be set aside was executed solely because of mistake. The case now before us presents a materially different situation. The bill of complaint does not allege that plaintiff made the gift to his wife, of the corporate stock, for the purpose of minimizing his income tax payments. As before noted, he does allege in substance that he believed such result would follow. It may be noted also that much of the hardship that he claims results from the situation in which he has placed himself has been brought about by material increases in the Federal income tax rates. On the hearing before the trial court plaintiff was a witness in his own behalf and testified in part as follows:

(Direct examination.)

"*Q.* At the time of making this gift, Mr. Lowry, did you explain to your wife why you were doing it?

"*A.* Yes, I did.

"*Q.* Will you tell us what you told her at that time?

"*A.* I told her that I felt it was that I wanted to make her this gift because I wanted her to have property of her own independent of mine, which she

could do with as she chose. I explained that this would tend to reduce our gross tax—income tax—by having our income split and would also accomplish the other purpose which we had in mind having—letting her to begin to build up an estate of her own.

"*Q.* You say you told her that it would reduce your income tax. I take it you mean that because you would create by this gift two entities paying tax, that the tax would be in a lower bracket, is that right?

"*A.* That is right. However, at that time the differential was not substantial because tax rates were lower than they are now, so that wasn't the prime consideration. There was a reduction naturally, by dividing your interest. It was not the prime purpose.

"*Q.* But at any rate, one of the reasons you made this gift, you would save money on income taxes.

"*A.* Yes, that is correct."

(Cross-examination.)

"*Q.* Mr. Lowry, when you made this gift in May of 1937, when you wrote the document to Mrs. Lowry, exhibit 2, you intended to do exactly what you said in that letter, did you not?

"*A.* I did.

"*Q.* You wanted to give her half of your shares in the Charles R. Sligh Company for two basic reasons. One was, I understand it, to start creating an estate for her in her own right?

"*A.* That is right.

"*Q.* And the other was the eventuality of that by so doing you would decrease your own tax obligation to the government?

"*A.* That is right.

"*Q.* Of course she would have a corresponding tax obligation on whatever her income then was?

"*A.* That is right.

"*Q.* You have any notion, Mr. Lowry, which of those desires was the stronger at that time? You really wanted to give her a portion of your property to create or start this creation of an estate?

"*A.* That was the prime purpose.   *   *   *

"*Q.* And you did have as one of the elements in your mind that there would be some tax advantages to you by giving her a portion of your property?

"*A.* I did."

It is a fair conclusion from plaintiff's testimony that his principal purpose in making the gift to his wife was not to minimize his income tax payments. It is significant that he makes no claim, either in his bill of complaint or in his testimony as set forth in the record, that he would not have made the gift except for his mistaken belief with reference to such taxes. Neither is there any claim on his part that he advised his wife that he was transferring the stock to her in order to relieve himself of the payment of income taxes on the profits that might be received thereon. Rather, as appears from his testimony, he merely suggested to her that such result would follow. The reason that he gave her for making the gift was that he wanted her to have "property of her own." As he expressed it, he wished her "to build up an estate." That was his "prime purpose" in making the gift.

It appears further from plaintiff's testimony, above quoted, that under the tax rates obtaining at the time the gift was made, in May, 1937, the saving in income taxes, if it had been effectuated as expected by plaintiff, would not have been substantial. The fact that subsequent changes in the tax rates and increased earnings from the business have demonstrated that plaintiff did not act wisely from his own financial standpoint, in making the gift, does not entitle him to the relief that he now seeks. It should be borne in mind, also, that while the corporation remained in existence the income taxes on the dividends on the shares transferred to Mrs. Lowry were paid by her. No question seems to have been raised by the Federal department of internal reve-

nue until after the formation of the limited partnership and the carrying on of the business under that organization.

We conclude that the result reached by the trial court was correct. Each case of this character must be determined on the facts involved. On the record before us plaintiff is not entitled to the equitable relief sought. The decree of the trial court is affirmed, with costs of this Court to appellee, Sara H. Lowry.

BUSHNELL, C. J., and SHARPE, BOYLES, REID, NORTH, DETHMERS, and BUTZEL, JJ., concurred.