SMITH v GENERAL MORTGAGE CORPORATION

Opinion of the Court

1. Insurance—Fire Insurance—Mortgages—Foreclosure—Insurance Proceeds.

The rules to be applied in situations where there has been a fire on mortgaged property and the mortgagee has purchased the mortgaged premises at a foreclosure sale for a bid which is sufficient to completely extinguish the mortgage debt are: (1) where the sequence of events is a fire *after* foreclosure sale, the mortgagee is entitled to receive all of the fire insurance proceeds if the fire occurs before the equity of redemption expires, and (2) if the sequence of events is fire *before* foreclosure sale, the mortgagor is entitled to all of the fire insurance proceeds.

2. Appeal and Error—Equity—New Rule—Enforcement—Mistake of Law or Fact.

An appellate court will remand to the trial court for changes in the judgment where strict enforcement of a new and previously unannounced rule of law would be unjust; such a situation arises where there is a mutual mistake of law or fact and the rule imposes an undeserved loss on one party while simultaneously conferring an unearned benefit on the other party.

3. Appeal and Error—Equity—De Novo Review.

Appellate courts review equity actions *de novo*.

Partial Dissent by D. E. Holbrook, J.

4. Insurance—Fire Insurance—Equity—Mortgages—Foreclosure—Mistake—Insurance Proceeds.

*A mortgagee, after fire has destroyed the mortgaged premises and after default by the mortgagor, should not foreclose its mort-*

References for Points in Headnotes
[1, 4] 44 Am Jur 2d, Insurance § 1651.
[2] 5 Am Jur 2d, Appeal and Error § 546.
[3] 5 Am Jur 2d, Appeal and Error § 822.
[5] 55 Am Jur 2d, Mortgages § 625.

*gage where fire insurance money is available to pay the amount due on the mortgage.*

5. MORTGAGES—FORECLOSURE—COSTS—ATTORNEY FEES.

*It is unjust to charge mortgagors the costs of foreclosing a mortgage, including attorney fees, where the mortgagee's foreclosure is clearly improper.*

Appeal from Wayne, George E. Bowles, J. Submitted January 4, 1977, at Detroit. (Docket No. 24822.) Decided March 1, 1977. Leave to appeal applied for.

Complaint by Charles Smith and Peggy Smith against General Mortgage Corporation to compel endorsement of a fire insurance proceeds check. Federal National Mortgage Association was allowed to intervene as a defendant. Summary judgment for defendants. Plaintiffs appeal. Remanded with instructions.

*Rosenbaum, Bloom, Kaufman, Appel & Moses,* for plaintiffs.

*Kasper & Devine,* for defendants.

Before: ALLEN, P. J., and D. E. HOLBROOK and D. C. RILEY, JJ.

ALLEN, P. J. Where fire occurs before a mortgage foreclosure at which the mortgagee has bid in the property for the balance remaining due on the mortgage, who, as between mortgagor and mortgagee is entitled to the fire insurance proceeds? This question of apparent first impression in Michigan, though considered in other jurisdictions, comes to us following the trial court's grant of summary judgment in favor of defendant mortgagees.

The mortgage in question was issued on January 4, 1969. The named mortgagee was defendant General Mortgage Corporation. That defendant is

actually a servicing agent for defendant Federal National Mortgage Association (FNMA). Consequently, the mortgagee's interest was immediately assigned by General Mortgage to FNMA. The mortgage contained a clause specifically designed to create an insurable interest in the mortgagee. Casualty insurance was to be paid for by the plaintiff mortgagors; but payment in the event of loss was to be sent to the mortgagee to be applied at its option either to reduce the mortgage debt or to repair the property.

The property was insured for $18,000. As of October, 1974, the balance due on the mortgage had been reduced to approximately $13,000. On October 17, 1974, the mortgaged house was totally destroyed by fire. At that time, plaintiffs were either already in default on their mortgage payments or went into default when they failed to make the November, 1974 payment on the mortgage.

In its capacity as a servicing agent for defendant FNMA, defendant General Mortgage began foreclosure proceedings on December 1, 1974. At a foreclosure sale held on January 7, 1975, defendant mortgagee FNMA bid in the property for $13,961, the amount of the then outstanding debt plus its foreclosure costs and attorneys' fees. One of several mysteries raised by these facts is why the plaintiff mortgagors allowed their default to continue once it became clear that they could ultimately collect $18,000 from the insurance company. Their failure to clear the default or even to ask the defendants about the possibility of doing so has never been satisfactorily explained.

Six months after the foreclosure sale, the insurance company sent a check for $18,000 to defendant General Mortgage. The payees' names on the

check were General Mortgage and plaintiffs Charles Smith and Peggy Smith. The styling of the check meant that neither plaintiffs nor defendants could cash the check without the other's cooperation. Since no agreement could be reached as to allocation of the proceeds, the check remains uncashed today. This lawsuit is an equity action by the plaintiffs to compel defendant General Mortgage to endorse the check or to obtain an exercise of the court's equitable powers to prevent an "unjust enrichment" of the defendants. The plaintiffs' position is that they are entitled to the full $18,000 because the mortgage debt was extinguished when FNMA entered its bid at the foreclosure sale equal to the full amount of the debt. MCLA 600.3252; MSA 27A.3252. Defendants' position is that the property is now practically worthless and that they should be entitled to retain a portion of the insurance proceeds equal to the amount of the former debt plus costs and attorneys' fees. The trial judge granted the defendants' motion for summary judgment on those terms. In effect, the judgment awards defendants approximately $14,000 of the proceeds, with the remaining $4,000 going to the plaintiffs. The question presented[1] is whether the trial judge erred by allocating the proceeds of the insurance policy in the manner described.

We previously indicated our inability to understand why the plaintiffs allowed their default to continue when they could readily have cured the

---

[1] Plaintiffs also challenge the trial judge's decision to allow defendant FNMA to intervene in an action brought only against defendant General Mortgage. Although styled as an action to prevent unjust enrichment, the present suit has many of the characteristics of interpleader actions. GCR 1963, 210. We believe that the intervention of FNMA was authorized by GCR 1963, 209.1(4). At the very least, the trial judge did not abuse his discretion to allow intervention pursuant to GCR 1963, 209.2(2).

default by collecting the insurance proceeds. Equally puzzling was defendant FNMA's decision to bid nearly $14,000 for property which is now described as practically worthless. In the more typical case where a fire occurs *after* the foreclosure sale, the mortgagee remains insured by the preexisting policy, at least until the mortgagor's equity of redemption expires. That would mean that a mortgagee would be entitled to collect the full insurance proceeds if the fire occurred immediately after the foreclosure sale. *FNMA v Ohio Casualty Insurance Co,* 46 Mich App 587; 208 NW2d 573 (1973), *Consolidated Mortgage Corp v American Security Insurance Co,* 69 Mich App 251; 244 NW2d 434 (1976).

The trial judge relied upon *FNMA v Ohio Casualty Insurance Co, supra,* as authority for granting summary judgment for the defendants. It seems likely that defendant FNMA also relied upon the *Ohio Casualty* case and others like it from other jurisdictions when it decided to bid the full amount of the mortgage debt at the foreclosure sale. In other words, the bid of $14,000 for the worthless property made sense if FNMA believed that it would be entitled to collect at least $14,000, and perhaps $18,000, of insurance proceeds.

But both the trial judge and the defendants failed to note that there is one very important factual difference between this case and the more typical situation involved in the *Ohio Casualty* decision. That difference is that the fire in this case occurred *before* the foreclosure sale. This type of case should arise very infrequently since, as we have already noted, there should be no need for a foreclosure sale where the fire insurance proceeds are available to cure the default. Nevertheless, a few jurisdictions have dealt with this problem.

*Smith v Mutual Fire Insurance Co of Michigan,*
234 Mich 119; 208 NW 145 (1926), involved a
similar sequence of events *(i.e.,* fire before foreclo-
sure sale) and contains some statements support-
ing the plaintiffs' position that the defendants
cannot claim any of the insurance proceeds since
they purchased the property at the foreclosure
sale for the full amount of the mortgage debt. But
*Smith* was a suit by the foreclosed mortgagor
against the fire insurance company. The state-
ments by the Court denying any possible claim by
the mortgagee were intended only to defeat a
defense raised by the insurance company in an
effort to avoid making payment to the mortgagor.

Although *Smith* could be distinguished on that
basis, it so happens that it has properly antici-
pated the ruling of courts in other states which
have considered precisely the problem raised by
the present appeal. In both *Whitestone Savings &
Loan Ass'n v Allstate Insurance Co,* 28 NY2d 332;
321 NYS2d 862; 270 NE2d 694 (1971), and *North-
western National Insurance Co v Mildenberger,*
359 SW2d 380 (Mo App 1962), the courts concluded
that mortgagees in the position of the present
defendants were not entitled to any of the insur-
ance proceeds. We are persuaded by Judge Brei-
tel's reasoning in the *Whitestone* case:

> "What seems to have caused confusion is the equally
> well-settled rule that the rights under a fire insurance
> policy are fixed both as to amount and standing to
> recover at the time of the fire loss. From this rule it has
> been further and improperly deduced that the mortga-
> gee could do nothing to impair his rights thus fixed at
> the time of loss.
>
> \*   \*   \*
>
> "The theory of recovery by a mortgagee is indemnity.
> The risk insured against is an impairment of the mort-

gaged property which adversely affects the mortgagee's ability to resort to the property as a source for repayment. Where the debt has been satisfied in full subsequent to the fire, neither reason nor precedent suggest recovery on the policy by the mortgagee.

"The rule is not harsh and it is eminently practical. None disputes that the mortgagee is entitled to recover only his debt. Any surplus *value* belongs to others, namely, the mortgagor or subsequent lienors. Indeed, it is not conceivable that the mortgagee could recover a deficiency judgment against the mortgagor if it had bid in the full amount of the debt at foreclosure sale. *To allow the mortgagee, after effectively cutting off or discouraging lower bidders, to take the property—and then establish that it was worth less than the bid—encourages fraud, creates uncertainty as to the mortgagor's rights, and most unfairly deprives the sale of whatever leaven comes from other bidders."* 321 NYS2d at 863, 866. (Emphasis supplied.)

See also *Nationwide Mutual Fire Insurance Co v Wilborn,* 291 Ala 193; 279 So 2d 460 (1973), *Insurance Co of North America v Citizens' Insurance Co of New Jersey,* 425 F2d 1180 (CA 7, 1970), and *Rosenbaum v Funcannon,* 308 F2d 680 (CA 9, 1962).

From all of the preceding cases, we draw the following rules to be applied in situations where the mortgagee purchases the mortgaged premises at a foreclosure sale for a bid which is sufficient to completely extinguish the mortgage debt:

(1) Where the sequence of events is fire *after* foreclosure sale, the mortgagee is entitled to receive all of the insurance proceeds if the fire occurs before the equity of redemption expires. *FNMA v Ohio Casualty Insurance Co, supra, Consolidated Mortgage Corp v American Security Insurance Co, supra.*

(2) If the sequence of events is fire *before* foreclosure sale, the mortgagor is entitled to all of the

insurance proceeds. *Whitestone Savings & Loan Ass'n v Allstate Insurance Co, supra.*

A strict application of the second rule would mandate reversal of judgment in the present case and entry of summary judgment awarding plaintiffs the full amount of the check for $18,000. But we decline to do so because that result would be contrary to the very equitable principle, *viz.,* prevention of unjust enrichment, which the plaintiffs have invoked. The rule announced in *Whitestone Savings & Loan Ass'n v Allstate Insurance Co, supra,* and the other foreign jurisdiction cases has never previously been recognized in Michigan.[2] We recognize that litigants are often made to suffer because they fail to properly anticipate legal developments. Such a failure is a mistake of law which, unlike a mistake of fact, may ordinarily not be forgiven. Still, we are conscious of the fact that strict enforcement of a previously unannounced rule in this case would impose an undeserved loss upon the defendants while simultaneously conferring an unearned benefit upon the plaintiffs. In *Moritz v Horsman,* 305 Mich 627; 9 NW2d 868 (1943), the Court quoted with approval the following language from *Reggio v Warren,* 207 Mass 525; 93 NE 805 (1911):

"The important question was not whether the mistake was one of law or fact, but whether the particular mistake was such as a court of equity will correct, and this depends upon whether the case falls within the *fundamental principle of equity that no one shall be allowed to enrich himself unjustly at the expense of another by reason of an innocent mistake of law or of fact entertained by both parties."* (Emphasis supplied.) 305 Mich at 634.

---

[2] *But see* the discussion of *Smith v Mutual Fire Insurance Co of Michigan, supra.*

We assume that the mistake was mutual. If the plaintiffs have deliberately created this rather unusual set of circumstances, that would only reinforce our conclusion that strict enforcement of the new rule would be unjust.

In Michigan, appellate courts review equity actions *de novo. Stachnik v Winkel,* 394 Mich 375; 230 NW2d 529 (1975). We have done so and now remand this case for entry of an order embodying the following provisions:

(1) Plaintiffs shall endorse the check from the insurance company now held by defendant General Mortgage.

(2) From the proceeds of that check, defendant General Mortgage shall pay $13,961 to defendant FNMA and pay the remaining $4,039 jointly to plaintiffs Charles and Peggy Smith.

(3) If the plaintiffs so request in the trial court, the judgment entered pursuant to this opinion shall require defendant FNMA to give the plaintiffs a deed conveying fee title to the property from defendant FNMA to plaintiffs Charles and Peggy Smith as tenants by the entireties. If the plaintiffs make no such request prior to the entry of judgment, title to the property shall remain in defendant FNMA.

In all cases involving foreclosure sales occurring after the release date of this opinion, this case should be cited only for the general rules announced herein, not the specific equitable exception created for these unique facts.

Judgment vacated; cause remanded for entry of a judgment in accord with this opinion.

D. C. Riley, J., concurred.

D. E. Holbrook, J. *(concurring in part, dissent-*

*ing in part).* This writer concurs in the majority's discussion of the law applicable in the instant case. However, this writer cannot concur in the result achieved herein. There is no need to carve out an equitable exception in the instant case in order to give defendant the benefit of its mistake. Defendant mortgage company should not have foreclosed this mortgage after fire had destroyed the premises when insurance money was available to pay the amount due on the mortgage.

The proper rule applicable herein is that if the sequence of events is that the fire occurs before the foreclosure the mortgagor is entitled to all of the insurance proceeds, majority opinion page 726, *Whitestone Savings & Loan Association v Allstate Insurance Co,* 28 NY2d 332; 321 NYS2d 862; 270 NE2d 694 (1971). There is no direct Michigan authority on this point. Nevertheless, there was sufficient authority in other jurisdictions which should have put defendant on notice. *Northwestern National Insurance Co v Mildenberger,* 359 SW2d 380 (Mo App, 1962), *Insurance Co of North America v Citizens Insurance Co of New Jersey,* 425 F2d 1180 (CA 7, 1970). Furthermore, this rule is dictated by common sense, majority opinion at 725, citing *Whitestone, supra.* The mortgage company should not be entitled to plead ignorance to their advantage 'over the individual mortgagor plaintiffs herein. This is a case of first impression in Michigan and defendant therefore is entitled to some consideration. The proper relief which should be granted is to set aside the foreclosure and place the parties in the same position as had their expectations and intent been carried out. Under this approach, plaintiffs would receive title to the property and the surplus of the insurance proceeds. The defendant would receive the amount

outstanding on the mortgage at the time of the fire loss, the proper time for such determination. This is approximately the same outcome as that reached by the majority opinion. However, the majority opinion also allows the defendant approximately $1,000 in foreclosure costs and attorney's fees.[1] This writer cannot concur with such a result. The foreclosure was, in reality, improper. Both parties knew the property was properly insured for the benefit of the mortgagee.[2] There was no necessity for this foreclosure when defendant knew insurance proceeds were available. There is no evidence or allegation of bad faith on defendant's part, however, this foreclosure was clearly improper and should be corrected by this Court. Nevertheless, plaintiffs herein should not be penalized for defendant's improper action. To allow defendant to still be entitled to the proceeds of insurance in spite of having foreclosed on the mortgage and in addition to charge plaintiffs for the costs of foreclosing the mortgage is unjust. Even placing the parties in a position whereby the foreclosure is ignored is giving the defendant considerable benefit of doubt, but going one step further and charging plaintiffs with the cost of foreclosure is, in this writer's opinion, unjust.

This writer concurs in the majority's opinion vacating the order of the trial court, but must respectfully dissent from that part of the opinion directing judgment below. This writer so votes.

---

[1] The amount owing on the mortgage was approximately $13,000. However, the majority opinion authorizes payment of $13,961 to defendant, the difference constituting foreclosure costs and attorney's fees. See majority opinion, pp 722 and 728.

[2] It is not hard to see why a layman would think that his obligation to continue mortgage payments ceased upon destruction of the property when he knew that the mortgage provided for the mortgagee to receive insurance proceeds which were more than sufficient to pay the amount owing on the mortgage.