## MILLER *v.* NATIONAL BANK OF DETROIT.

1. TRUSTS—REFORMATION—MISTAKE.

Where donor in setting up primary and secondary trusts of partnership funds for his wife and daughters for the purpose of lawfully minimizing his Federal income tax was mistaken in such respect, and was unable to pay the tax assessed, reformation of the trust so as to substitute therein preferred stock of corporate successor of partnership *held*, a practical and just solution of the situation presented, it being shown that the partnership business was otherwise threatened with termination through lack of credit.

2. SAME—PURPOSES—MINIMIZATION OF FEDERAL INCOME TAX—CREATION OF ESTATES—EVIDENCE.

Where plaintiffs, husband and wife, established nine primary and nine secondary trusts with partnership capital derived from funds supplied solely by plaintiff husband for the benefit of the wife and their four daughters, claimed to have been established in order to minimize his Federal income tax and to create separate estates for the ultimate beneficiaries, evidence in suit to reform trusts *held*, to show there was but the one fundamental purpose, that of minimizing the donor's Federal income tax.

3. SAME—MISTAKE—REFORMATION.

Where donor set up nine primary and nine secondary trusts for purpose of minimizing his Federal income tax, the fact that he

<hr />

REFERENCES FOR POINTS IN HEADNOTES
[1-3] 45 Am Jur, Reformation of Instruments, § 50 *et seq.*

has not pursued to final judicial decision the determination of the department of internal revenue that he was mistaken in pursuing such course for that purpose would not preclude equitable relief of reforming the trust instruments, since by reason of the unexpected and unforeseen exigency of his financial embarrassment he was unable to pay the income tax and until he pays it he cannot obtain review thereof in the courts (26 USCA, § 3653a).

4. Costs—Trusts.

Where trial court's decree authorized appellant trustee to reimburse itself for its reasonable and necessary expenses out of the trust funds in its custody, no costs are awarded on appeal.

Appeal from Oakland; Hartrick (George B.), J. Submitted June 8, 1949. (Docket No. 12, Calendar No. 44,403.) Decided September 8, 1949.

Bill by Glenmore Miller and wife against National Bank of Detroit and others to set aside a voluntary trust. Decree for plaintiffs. Defendant National Bank of Detroit appeals. Affirmed.

*Samuel J. Patterson* and *Harcourt S. Patterson,* for plaintiffs.

*Dickinson, Wright, Davis, McKean & Cudlip* (*R. William Rogers,* of counsel), for defendant National Bank of Detroit.

North, J. In a general way the abstract issue presented in this case is stated in appellant's brief as follows:

"Where a donor of a trust is ignorant or mistaken with respect to his antecedent or existing private legal rights as to one purpose sought to be accomplished by the transaction but is fully informed thereof as to another purpose also sought to be accomplished thereby, will equity grant a reformation or rescission of the transaction?"

In effect the trial court by its decree answered in the affirmative; and this appeal by the defendant, National Bank of Detroit, as trustee, followed.

Plaintiffs, Glenmore Miller and Mabel Miller, husband and wife, are the parents of Venita Marie Miller-Guenther, age 21; Marjorie Louise Miller-Thompson, age 20; Shirley May Miller, age 15; and Glenna Jean Miller, age 10. Prior to June 21, 1943, plaintiff Glenmore Miller was the sole proprietor of the Superior Metal Products Manufacturing Company, engaged in a tool and die business located in Oakland county. On the date above noted plaintiffs made gifts to defendant Earl L. Phillips, as trustee, aggregating $20,000. Thereupon Phillips executed 9 declarations of trust. In 5 of these trusts Mr. Miller was the donor, and appellant, National Bank of Detroit, was the direct beneficiary, but as trustee for the benefit of Mrs. Miller and the 4 daughters above named. In the other 4 trust declarations executed by Phillips, plaintiff Mabel Miller was the donor, the National Bank of Detroit was the direct beneficiary, but as trustees for the benefit of the 4 daughters above named. Hereinafter the above 9 trusts will be referred to as the primary trusts. In these primary trusts it was provided that Earl L. Phillips should invest the $20,000 trust fund as a limited partner in a limited partnership to be formed and to hold such limited partnership interest in trust for the National Bank of Detroit and to pay over to said bank all avails and incomes received by Phillips as trustee from the limited partnership to the defendant National Bank of Detroit as trustee.

Simultaneously with the creation of these primary trusts the National Bank of Detroit executed 9 declarations of trust whereby it agreed to hold in trust and accumulate for the benefit of the wife and 4 daughters, respectively, all income derived from

the limited partnership by Phillips and paid by him to the bank. In each of the trust agreements executed by the bank the unknown, unborn issue of any of the 4 daughters were made contingent beneficiaries. We herein refer to these 9 latter trusts as secondary trusts.

A limited partnership was formed under the name of Superior Metal Products Manufacturing Company, with a fixed term of the partnership as 5 years from and after June 21, 1943. Its contributed capital by the limited partner Phillips was the $20,000 trust fund. Mr. Miller, as a general partner, contributed the assets of his former business at a valuation in excess of $16,000. Mrs. Miller, as a general partner, purported to contribute to the partnership's capital $4,000 in cash, which, however, was furnished by Mr. Miller. Under the terms of the limited partnership Mr. Miller was to receive 40 per cent. of the profits, Mrs. Miller 10 per cent., and the limited partner, Earl L. Phillips, 50 per cent. The limited partnership from the date of its organization to October 22, 1947, carried on the business formerly operated by Mr. Miller. On the last named date Mr. and Mrs. Miller, without the consent of Phillips, conveyed all of the assets of the limited partnership to a corporation of the same name in exchange for all the outstanding stock of the new corporation. In this way the limited partnership made the sole capital contribution to the new corporation. As above noted the terms of the limited partnership expired June 21, 1948.

In the years 1943, 1944 and 1945 the limited partnership made large profits, yet at the time the partnership assets were transferred in 1947 to the corporation, and in June, 1948, when the term of the partnership expired, and at the time this suit was tried, under the terms of the trust in which Phillips was the beneficiary as trustee for the National Bank

of Detroit, the limited partnership was indebted to Phillips in the amount of $20,000 for income earned in 1945, in the amount of $18,607.73 for the period from January 1, 1947, to June 21, 1948, and further in the sum of $20,000 for return of capital investment which accrued upon the expiration of the limited partnership term, June 21, 1948. The total of such indebtedness was $58,607.73.

The record justifies the conclusion that the above outlined transactions were instigated by Mr. Miller and perfected in consequence of his having been advised by competent tax counsel that he could thereby lawfully minimize his Federal income tax. He testified that such was his "sole purpose." We are satisfied that such in fact was at least his primary or main purpose, notwithstanding he also testified that the 9 secondary trusts were "established for the sole purpose of creating estates for the beneficiaries named therein."

The attempt to minimize Miller's income tax in the manner hereinbefore noted proved to be ineffective. The department of internal revenue charged all of the 1943 taxable income of the limited partnership to Mr. Miller individually, and for that year Miller was assessed with a deficiency in his income tax payment amounting to $76,956.14. And the department of internal revenue took the same position as to Mr. Miller's personal liability for payment of the corresponding income taxes for 1944 and 1945. For the 3 years involved the increase in income taxes was estimated as amounting to $150,000. The Federal government has filed a tax lien for the 1943 income tax and has issued a warrant of distraint. There is uncontradicted testimony that the filing of a tax lien for the above mentioned taxes "would tend to limit the partnership's credit to such an extent that the business could probably not be carried on." The uncontroverted testimony is that Mr. Miller

"isn't able to pay the tax, he doesn't have the cash to pay the tax with." When the factual situation developed as above outlined Mr. and Mrs. Miller filed the bill of complaint herein. A guardian *ad litem* was appointed for the "minor beneficiaries" and for the "unknown, unborn, contingent beneficiaries" under the secondary trusts, and all parties in interest were properly before the court. The relief sought in the bill of complaint as amended and granted by the trial court was in substance as follows:

(1) That by the acts of plaintiffs the limited partnership was dissolved as of October 22, 1947.

(2) That on the same date plaintiffs lawfully rescinded the Phillips trust under the terms of which there was then due to Phillips, as trustee, from the limited partnership a total of $58,607.73; and that said sum be allocated to the 9 secondary trusts.

(3) That the 9 secondary trusts be reformed in the following manner. In lieu of said $58,607.73 "the plaintiffs herein may execute and deliver directly to the National Bank of Detroit, trustee,  \*  \*  \* and the said National Bank of Detroit, trustee, may accept in place and instead of said sum of cash, preferred stock in the sum of $58,000, issued by the Superior Metal Products Manufacturing Company, a Michigan corporation, with a 20-year maximum term from June 21, 1948, bearing interest at the rate of 4 per cent. per annum, which interest shall be cumulative, and that said preferred stock shall also embody a provision that the stock may be called for redemption at any time by the said corporation, provided the entire amount of interest accrued thereon is paid at the time of redeeming said stock."

(4) That upon delivery of the preferred stock to the bank trustee, Earl L. Phillips, as limited partner and trustee, was discharged of all his duties and obligations as such; and the National Bank of Detroit, trustee, was decreed to have fulfilled its duties

and obligations under the applicable provisions of the trust agreements and declarations of trust upon its receipt of the said preferred stock.

From the decree entered in the circuit court August 13, 1948, only the National Bank of Detroit in its capacity as trustee appealed. In its brief it states:

"It is the position of National Bank of Detroit as such trustee that the plaintiffs have not established their right to the relief which was granted under either of the foregoing theories (noted in the following paragraph)."

As stated in appellant's brief the 2 theories upon which the trial court granted equitable relief were: "(1) That the donors were mistaken as to their antecedent and existing legal rights to minimize their income taxes in the manner which was attempted, * * * and (2) that when the purpose of a trust has failed or unexpected and unforeseen conditions and exigencies have arisen, a court of equity has inherent power to reform the trust."

We are of the opinion that plaintiffs as donors were mistaken as to their legal rights incident to creating the respective trusts; and further if reformation of said trusts had not been granted, such trusts as to future beneficial accumulations would have failed because of the financial straits in which Mr. Miller ultimately found himself, which circumstance quite conclusively would have resulted in failure of the successor corporation which was the prospective source of further accruals to the secondary trusts. Under such circumstances it was within the jurisdiction of the circuit court to grant relief; and under this record the relief granted appears to be a practical and just solution of the situation as presented to the trial judge.

We are not in accord with the contention in appel-

lant's brief "that two separate and distinct purposes were sought to be accomplished by the formation of the limited partnership and the execution of the various trust agreements. One of these purposes was to minimize income taxes and the other was to create separate estates for the ultimate beneficiaries." Instead, in our opinion, the only thing that motivated Mr. Miller in causing the trusts to be formed was his desire to minimize in a supposedly lawful manner his income tax; and had he not believed that would be accomplished in the manner attempted he would not have caused the trusts to be created. Indicative of this is the rather circuitous manner in which the trusts were designed to operate. In our view there were not "two separate and distinct purposes (which) were sought to be accomplished." Instead there was one fundamental purpose—the desire of Miller to reduce the income tax which he mistakenly thought could be lawfully accomplished by the creation of the trusts. Creation of these trusts was merely a means by which Miller expected to accomplish the desired result. Thus considered, all that was done must be construed as one transaction designed to accomplish the single purpose of minimizing Miller's income tax; and decision herein is controlled by *Stone* v. *Stone,* 319 Mich 194 (174 ALR 1349), which results in affirmance of the circuit court's decree herein.

*Lowry* v. *Collector of Internal Revenue,* 322 Mich 532, upon which appellant largely relies, is not in point because, as stated in appellant's brief concerning the *Lowry Case,* "it appeared from the testimony (in that case) that the principal purpose of the donor in making the gift was not to minimize his income taxes but was to create a separate estate in the donee."

We are not in accord with appellant's contention that since Mr. Miller has not pursued to final judicial decision the holding of the department of inter-

nal revenue that Miller is personally liable for payment of the respective income taxes, therefore plaintiffs were not entitled to equitable relief in the instant case.   Because of Miller's financial embarrassment he was not able to pay the income tax and until such tax is paid the taxpayer cannot obtain review in the courts.   See Internal Revenue Code, chap 36, § 3653(a).*

The final question presented in appellant's brief is as follows:

"Where unexpected and unforeseen exigencies affect only the donor of a gift in trust and not the trust estate or the interest of the beneficiaries, will equity grant a reformation or rescission of the trust?"

As noted earlier in this opinion the unexpected and unforeseen exigencies which occurred in the instant case not only affected the rights of the donors, but insofar as future additions to the trust funds of the secondary trusts are concerned, they and also the interests of the beneficiaries therein, were materially affected by these same unexpected and unforeseen exigencies.   This seems to be admitted in appellant's brief wherein it is said:

"This defendant and appellant, National Bank of Detroit, has no knowledge as to whether it or the primary trustee, Earl L. Phillips, can collect those sums which are due to the primary trustee Phillips from the limited partnership, and it appears to be a fair inference from the testimony that such collection probably cannot be made without a forced liquidation of Mr. Miller's business, the physical assets of which are now owned by the corporation which succeeded the partnership.   We agree that such result would, to say the least, be inequitable and in the long run detrimental to the interests of those persons for whom this appellant is trustee."

---

* 26 USCA, § 3653a.—REPORTER.

The decree entered in the circuit court is affirmed; but since by decree of the trial court appellant is authorized to reimburse itself for its reasonable and necessary expenses out of the trust funds in its custody, no costs are awarded.

SHARPE, C. J., and BUSHNELL, BOYLES, REID, DETHMERS, BUTZEL, and CARR, JJ., concurred.