*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

NORMAN HAMILTON,

      Plaintiff-Appellant,

v

CITIZENS INSURANCE COMPANY OF
MIDWEST and MID-VALLEY AGENCY, INC.,

      Defendants-Appellees,

and

RICHARDSON FORD, INC.,

      Defendant.

UNPUBLISHED
May 12, 2022

No. 356967
Saginaw Circuit Court
LC No. 20-041555-NZ

Before: LETICA, P.J., and MARKEY and O'BRIEN, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's order denying plaintiff's motion to reconsider the court's previous orders granting the motions for summary disposition filed by defendant Mid-Valley Agency, Inc. and defendant Citizens Insurance Company of the Midwest.[1] For the reasons set forth in this opinion, we affirm.

---

[1] Plaintiff also filed claims against defendant Richardson Ford, Inc., who is not a party to this appeal. The trial court granted summary disposition in favor of Richardson Ford on all but one of plaintiff's claims. After the trial court denied the motion for reconsideration from which plaintiff now appeals, plaintiff and Richardson Ford stipulated to dismiss plaintiff's final claim. Technically, the order dismissing plaintiff's final claim against Richardson Ford was the final order that closed the case, and thus that is the order from which plaintiff had an appeal as of right. See MCR 7.203(A)(1). To any extent that plaintiff's failure to appeal the correct order could be

-1-

# I. BACKGROUND

This case stems from an August 2019 accident in which plaintiff totaled his newly purchased F-350 truck.

On July 18, 2019, plaintiff traded in his old truck and purchased the F-350 at issue in this case for $65,301.54 from Richardson Ford, Inc. Plaintiff's old truck was insured by Citizens, and he acquired his policy through Mid-Valley, an independent insurance agency. Before taking his new truck, plaintiff asked if it was okay to take the truck off the lot, and he was told by employees for Richardson Ford that "everything's fine and you're ready to go." Plaintiff understood this to mean "that there was insurance on" the truck.

Jennifer Howie, a customer service representative for Mid-Valley, explained that, while she was contacted by a salesperson from Richardson Ford saying he was working with plaintiff on trading in his old vehicle for a new F-350, the F-350 was never added to plaintiff's policy. According to Howie, she told the salesperson that she "needed to speak with the insured" before adding the F-350 to plaintiff's policy "because it is not legal to update a policy without talking to the actual policy holder[.]" Shortly after ending the call with the employee from Richardson Ford, Howie called plaintiff and left a voicemail saying that plaintiff needed to call her back or she would not be able to update his policy. Plaintiff never called Howie back, however, so she assumed that plaintiff ended up not buying the truck, and she did not update plaintiff's policy to include the F-350.

Plaintiff confirmed that he received a voicemail from Mid-Valley about insuring his F-350, but explained that he did not find the message until late August 2019, after the accident involving F-350. Plaintiff testified that his son found the voicemail on plaintiff's phone. Plaintiff explained that he never saw the message before because he was not aware that his phone could receive voicemails. According to plaintiff, the message said for plaintiff to contact Mid-Valley about plaintiff's insurance.

On August 3, 2019—after plaintiff purchased the F-350 but before the accident—there was a fire at plaintiff's house. According to plaintiff, he spoke with an agent from Mid-Valley named Kyle[2] about covering the damage from the fire.

While Mid-Valley was in the process of handling this claim, plaintiff was involved in a motor-vehicle accident on August 28, 2019. The accident totaled plaintiff's new F-350. According to plaintiff, Kyle handled this claim as well, but Kyle found out that the F-350 was not listed on plaintiff's policy with Citizens.

Nevertheless, plaintiff filed a claim with Citizens for collision coverage for the F-350. On September 23, 2019, Citizens sent plaintiff a letter denying his claim because the F-350 was not

---

considered as a threat to this Court's jurisdiction, we would treat this appeal as on leave granted. See, e.g., *Consumers Energy Co v Storm*, 334 Mich App 638, 650; 965 NW2d 672 (2020).

[2] Kyle's last name was never provided.

insured for collision damage at the time of the accident. Plaintiff responded to this letter, and Citizens sent a second letter on November 12, 2019, saying that Citizens was not made aware that plaintiff had purchased the F-350 until after his accident, and per the terms of plaintiff's policy, collision coverage for a newly acquired vehicle was only available if the insured requested coverage within 14 days of purchase. Citizens explained that, because it had not been informed about the F-350 within the relevant time period, it was continuing to deny plaintiff's claim.

Eventually, plaintiff filed claims against Citizens, Mid-Valley, and Richardson Ford. As relevant to this appeal, plaintiff alleged that Citizens breached its contract with plaintiff by denying his claim for collision coverage for his F-350 following the August 2019 accident. Against Mid-Valley, plaintiff filed a claim of negligence. Plaintiff alleged that Mid-Valley had duties to plaintiff including the duty to "tak[e] all necessary steps to ensure continued coverage for a change in circumstances, including maintaining existing insurance coverage for a newly purchased automobile," and that Mid-Valley "failed to exercise ordinary care in performing" its duties.

## A. PROCEEDINGS AGAINST CITIZENS

On December 15, 2020, plaintiff moved for partial summary disposition against Citizens under MCR 2.116(C)(10). Plaintiff argued that he did not need to provide any notice to Citizens in order for Citizens to cover his F-350 based on the provision in his policy that read, "If a 'newly acquired auto' replaces an auto shown in the Declarations, coverage is provided for this 'auto' without your having to ask us to insure it." Plaintiff alternatively argued that, if his reading was wrong, then the policy was ambiguous, and the terms of the contract should be construed against Citizens as the drafter.

On December 18, 2020, Citizens filed a competing motion for summary disposition under MCR 2.116(C)(10). Citizens argued that its policy with plaintiff unambiguously stated that collision coverage for a "newly acquired vehicle"—which is the type of coverage that plaintiff sought—was only available if Citizens was informed about the new vehicle within 14 days of the insured's acquiring it, and it was undisputed that no one informed Citizens that plaintiff purchased the F-350 within 14 days of his purchase. In response to plaintiff's motion for summary disposition, Citizens contended that the provision relied on by plaintiff was inapplicable because it explicitly excluded coverage "For Damage to Your Auto," and plaintiff was requesting collision coverage.

The trial court held a hearing on the parties' competing motions. After listening to the parties' arguments, the trial court found that the contract was unambiguous and supported Citizens' interpretation—the policy did not provide collision coverage for plaintiff's F-350 at the time of the August 2019 accident because it was not a listed auto and plaintiff did not take the proper steps to ensure that the F-350 had collision coverage under the "newly acquired auto" provision of plaintiff's policy. Accordingly, the court granted Citizens' motion for summary disposition and denied plaintiff's partial motion for summary disposition.

## B.  PROCEEDINGS AGAINST MID-VALLEY

On December 8, 2020, Mid-Valley filed a motion for summary disposition under MCR 2.116(C)(10).  Mid-Valley contended that plaintiff's claim for negligence must fail because plaintiff could not establish that Mid-Valley breached any duty.  Mid-Valley explained that whether it breached any duty to plaintiff was "beyond the realm of the ordinary juror" because it required knowledge about "the standard of practice for an independent insurance agent." According to Mid-Valley, plaintiff needed to present expert testimony establishing this point, which he failed to do.  In addition, Mid-Valley submitted an affidavit from Michael McBride, who Mid-Valley retained as an expert in the practice of independent insurance agencies.  In his affidavit, McBride attested that the standard of care in the insurance business was to only add new vehicles to insurance policies after the insured confirms that they wish for the vehicle to be added. On the basis of this testimony and the fact that plaintiff never made such a request, Mid-Valley contended that it did not breach any duty to plaintiff, and, to the contrary, that Mid-Valley would have breached its duty to plaintiff if it *had* added the vehicle to plaintiff's insurance policy.

On January 6, 2021, plaintiff filed a response to Mid-Valley's motion.  Plaintiff argued that, among other duties, Mid-Valley had a duty to ensure that all of plaintiff's automobiles had insurance coverage.  Plaintiff included a laundry list of ways in which he believed that Mid-Valley breached the standard of care owed to plaintiff, including failing to communicate with plaintiff on more than one occasion about whether he acquired a new vehicle, failing to confirm whether plaintiff actually received the July 19, 2019 message, and failing to send plaintiff a written communication about the need for insurance on the new vehicle.  Plaintiff also briefly asserted that McBride's expert testimony that Mid-Valley did not breach any standard of care could "be rebutted by cross-examination and counter-proven with expert witnesses that have not been named by Plaintiff . . . ."

In reply, Mid-Valley pointed out that plaintiff had received actual notice that he needed to contact Mid-Valley to have the F-350 added to his policy, but he failed to do so.  As for plaintiff's assertions of the ways in which Mid-Valley breached the standard of care, Mid-Valley argued that the applicable standard of care was that of a reasonably prudent insurance agent, not of a reasonably prudent person, and that to establish this standard, plaintiff needed to produce expert testimony.  According to Mid-Valley, plaintiff's failure to offer such testimony meant his claim necessarily failed.  Mid-Valley further argued that it had produced evidence establishing that it had not breached the applicable standard of care through the affidavit of its expert, McBride, and that plaintiff had not presented any evidence rebutting this evidence and creating a question of fact for trial.  Instead, plaintiff merely claimed that he could create a question of fact through the future testimony of unnamed experts.

The trial court held a hearing on Mid-Valley's motion, and ultimately took Mid-Valley's motion under advisement.  At a hearing the following week, the court granted Mid-Valley's motion.  The trial court reasoned that, on the facts of this case, expert testimony was necessary to establish whether Mid-Valley, as an independent insurance agency, breached a duty to plaintiff.  It explained that plaintiff had not admitted any such testimony, so he could not sustain his claim.  It further reasoned that Mid-Valley had presented expert testimony establishing that it did not breach any duty owed to plaintiff, and that plaintiff had failed to create a question of fact on this point.

The court then noted that plaintiff "seemed to concede that he should get an expert," but reasoned that allowing plaintiff to do so at this point would be impermissible—discovery was closed, and it was time to demonstrate whether there were genuine issues of material fact for trial, which could not be accomplished by mere allegations or promises to produce evidence later. Accordingly, the court granted Mid-Valley's motion for summary disposition.

Plaintiff filed motions for reconsideration of the trial court's respective orders granting summary disposition to Citizens and Mid-Valley, which the lower court denied. This appeal followed.

## II. STANDARD OF REVIEW

Appellate courts review de novo a trial court's grant of summary disposition. *Innovation Ventures v Liquid Mfg*, 499 Mich 491, 506; 885 NW2d 861 (2016). Both Citizens and Mid-Valley moved for summary disposition under MCR 2.116(C)(10). In *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999), our Supreme Court explained the process for reviewing a motion filed under MCR 2.116(C)(10):

> A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion. Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law.

A genuine issue of material fact exists when, after viewing the evidence in a light most favorable to the nonmoving party, reasonable minds could differ on the issue. *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).

A moving party can satisfy its burden under MCL 2.116(C)(10) by either submitting affirmative evidence that negates an essential element of the nonmoving party's claim or by demonstrating to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim. *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 7; 890 NW2d 344 (2016). Once this initial burden is met, the nonmovant must "set forth specific facts showing that a genuine issue of material fact exists" and "may not rely on mere allegations or denials in the pleadings." *Id*. "If the opposing party fails to present documentary evidence establishing the existence of a material factual dispute, the motion is properly granted." *Id*.

Issues of contract interpretation present issues of law reviewed de novo. *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005).

## III. PLAINTIFF'S APPEAL AGAINST CITIZENS

On appeal, plaintiff contends that the trial court erred by granting Citizens' motion for summary disposition. We disagree.

Plaintiff first argues that Citizens, in its initial letter denying coverage, did not state that it was denying coverage because plaintiff failed to advise Citizens of his purchase of the F-350 within 14 days of acquiring it, and so Citizens is now precluded from relying on that reason during this litigation. See *Smith v Grange Mut Fire Ins Co of Mich*, 234 Mich 119, 122-123; 208 NW 145 (1926) (explaining that "when a loss under an insurance policy has occurred and payment refused for reasons stated, good faith requires that the company shall fully apprise the insured of all the defenses it intends to rely upon, and its failure to do so is, in legal effect, a waiver, and estops it from maintaining any defenses to an action on the policy other than those of which it has thus given notice"). See also *Bartlett Investments Inc v Certain Underwriters at Lloyd's London*, 319 Mich App 54, 58; 899 NW2d 761 (2017). This argument misunderstands why plaintiff's claim for coverage was rejected. His claim for coverage was rejected because, as Citizens outlined in its initial letter denying plaintiff's claim, plaintiff did not carry collision coverage for his F-350. Contrary to plaintiff's argument, Citizens did not deny coverage because plaintiff failed to notify Citizens of his purchase within 14 days. That, rather, was the reason the F-350 was not covered. In short, plaintiff's argument confuses the reason that Citizens denied plaintiff's claim (the F-350 was not covered) with the reason that the F-350 was not covered (plaintiff's failure to ask Citizens to insure the F-350 within 14 days of its purchase).

Plaintiff next argues that the trial court misinterpreted his insurance policy when it granted Citizens' motion for summary disposition. "[I]nsurance policies are subject to the same contract construction principles that apply to any other species of contract." *Rory*, 473 Mich at 461. Courts must therefore "construe and apply unambiguous contract provision as written." *Id*. When interpreting contracts, words are given their "plain and ordinary meaning." *Id*. at 464.

In July 2019, plaintiff purchased the F-350 and traded in his old truck that was covered under his policy. There is no dispute that this new truck was never added to plaintiff's policy. However, plaintiff's policy provided various forms of coverage for a "newly acquired auto" like the F-350. This was outlined in the Section N.2 in the definitions of plaintiff's policy, which provided in relevant part:

> Coverage for a "newly acquired auto" is provided as described below. If you ask us to insure a "newly acquired auto' after a specified time period described below has elapsed, any coverage we provide for a "newly acquired auto" will begin at the time you request the coverage.
>
> a. For any coverage provided in this policy except Coverage For Damage To Your Auto, a "newly acquired auto" will have the broadest coverage we now provide for any "auto" shown in the Declarations. Coverage begins on the date you become the owner. However, for this coverage to apply to a "newly acquired auto" which is in addition to any "auto" shown in the Declaration, you must ask us to insure it within 14 days after you become the owner.
>
> If a "newly acquired auto" replaces an "auto" shown in the Declarations, coverage is provided for this "auto" without your having to ask us to insure it.

b.  Collision Coverage for a 'newly acquired auto" begins on the date you become the owner.  However, for this coverage to apply, you must ask us to insure it within:

(1)  14 days after you become the owner if the Declarations indicate that Collision Coverage applies to at least one auto. . . .

After the August 2019 accident, plaintiff sought collision coverage for his F-350—the "newly acquired auto" under his policy.  By its plain language, Section N.2.b applies to collision coverage, and Section N.2.b.1 provides that "for coverage to apply you must ask us to insure [the newly acquired auto] within . . . 14 days after you become the owner . . . ."  There is no genuine issue of material fact that neither plaintiff nor anyone on plaintiff's behalf asked Citizens to insure his new truck within 14 days of its purchase, i.e., he did not satisfy the requirements for collision coverage of a "newly acquired auto" under Section N.2.b.1 of his policy.

Plaintiff argues that Section N.2 of his policy is, as a whole, ambiguous because, in Section N.2.a, it provides, that a "newly acquired auto" that "replaces an 'auto' shown in the Declarations" is automatically covered, while Section N.2.b.1 provides that coverage for a "newly acquired auto" is contingent on the insured's asking for coverage for the new auto within 14 days.  In other words, according to plaintiff, Section N.2.a provides that coverage for a newly acquired auto is automatic, while Section N.2.b.1 provides that it is not, making Section N.2 as a whole ambiguous.

This argument is unconvincing because plaintiff requested collision coverage for his F-350, and based on the plain language of the policy, Section N.2.a applies to "coverage provided in this policy except Coverage For Damage To Your Auto," whereas Section N.2.b.1 applies to "Collision Coverage."  Thus, Section N.2.b.1, not Section N.2.a, unambiguously applies to plaintiff's requested coverage.

Accordingly, because Section N.2.b.1 was unambiguous and applied to the facts of this case, and because there is no dispute that plaintiff did not satisfy that section's requirements for collision coverage, the trial court did not err by granting summary disposition in favor of Citizens.[3]

---

[3] In one paragraph, plaintiff reiterates an argument that he made in the lower court that pertained solely to Section N.2.a.  He argues that the 14-day notice requirement in the first paragraph of Section N.2.a does not apply to this case because that requirement is for "a 'newly acquired auto' which is in addition to any 'auto' shown in the Declarations," and the F-350 was a "newly acquired auto" that "replace[d] an 'auto' shown in the Declarations," which is covered by the second paragraph of Section N.2.a.  This argument is irrelevant because, for the reasons explained above, Section N.2.a did not apply to this case—plaintiff sought collision coverage of a "newly acquired auto," which was exclusively governed by Section N.2.b.

## IV. PLAINTIFF'S APPEAL AGAINST MID-VALLEY

On appeal, plaintiff challenges the trial court's grant of summary disposition in favor of Mid-Valley on plaintiff's claim of negligence.[4] "To establish a prima facie case of negligence, a plaintiff must prove the following elements: (1) the defendant owed the plaintiff a legal duty, (2) the defendant breached the legal duty, (3) the plaintiff suffered damages, and (4) the defendant's breach was a proximate cause of the plaintiff's damages." *Loweke v Ann Arbor Ceiling & Partition Co, LLC*, 489 Mich 157, 162; 809 NW2d 553 (2011).

Plaintiff's briefing on this issue seems to suggest that he mistakenly believes the lower court ruled that plaintiff failed to establish a question of fact on the first element of his claim—that Mid-Valley owed a duty to plaintiff. The court, instead, held that plaintiff failed to present evidence tending to establish the second element of his negligence claim—that Mid-Valley breached its duty to plaintiff. More specifically, the court held that plaintiff's claim failed because (1) he needed to present expert testimony to establish whether Mid-Valley breached its duty to him and he failed to do so and (2) Mid-Valley presented sufficient evidence to establish that it did not breach its duty to plaintiff, and this evidence was unrebutted.

Thus, the first matter to address on appeal is whether plaintiff needed to present expert testimony to establish whether Mid-Valley breached its duty owed to plaintiff. In *Zaremba Equip, Inc v Harco Nat'l Ins Co*, 280 Mich App 16, 44-45; 761 NW2d 151 (2008), this Court explained that

> the need for expert testimony in an insurance coverage case should be determined on a case-by-case basis and depends on the nature of the underlying claims of negligence raised against the agent. If the duty alleged to have been breached falls beyond the understanding of the average juror, a trial court may require that the party alleging negligence produce expert testimony supporting the claim.

The pertinent facts underlying this issue are undisputed. An employee from Richardson Ford called Howie, an agent for Mid-Valley, saying that plaintiff was considering buying an F-350, and Howie told this person that she needed to speak with plaintiff before she could add a new vehicle to his policy. Howie then left a voicemail with plaintiff telling him that he needed to call her back and let her know whether he actually purchased the F-350 and wanted Mid-Valley to add the F-350 to his policy. Howie explained that Mid-Valley could not update plaintiff's policy to add this vehicle without his permission. Unfortunately, plaintiff did not receive Howie's voicemail before his accident because he did not know that his phone could receive voicemails. After the accident, however, plaintiff's son found the voicemail from Mid-Valley on his phone, and plaintiff confirmed that it said that he needed to contact them about his insurance.

We agree with the trial court that, on these facts, an expert was necessary to establish whether Mid-Valley breached the standard of care because such a conclusion was not within a

---

[4] The trial court also granted summary disposition in favor of Mid-Valley on plaintiff's claim for breach of fiduciary duty, but plaintiff has not raised an issue on appeal with respect to that portion of the lower court's ruling.

layperson's knowledge. This is particularly so because Howie attempted to contact plaintiff about whether he wished to add the F-350 to his policy but he never returned the communication. This clearly showed that Mid-Valley took at least some steps to add the F-350 to plaintiff's policy, and Howie testified that she was not able to add the F-350 to plaintiff's policy without his permission. Moreover, Howie testified that, because plaintiff never called her back, she was not sure whether he went through with purchasing the F-350. Plaintiff does not explain how a layperson is to decipher whether Mid-Valley's actions were reasonable (or not) without the assistance of expert testimony.[5] Accordingly, because plaintiff failed to proffer any expert testimony to establish that Mid-Valley breached its duty to plaintiff, the trial court properly granted summary disposition to Mid-Valley. See *Lowrey*, 500 Mich at 7 (explaining that summary disposition is appropriate if the moving party demonstrates that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim).

Mid-Valley also submitted an affidavit from its own expert, McBride, who averred that the standard of care for an insurance agency is to not add a new vehicle to an insured's policy without a direct communication from the insured confirming that the vehicle be added "along with a confirmation and discussion of the specific insurance coverages to be put in place for the added vehicle." We again agree with the trial court that this evidence also supported granting summary disposition in Mid-Valley's favor. The evidence established that Mid-Valley did not breach its duty to plaintiff, and plaintiff failed to present competing evidence creating a question of fact on the issue. Thus, summary disposition in favor of Mid-Valley was proper on this basis as well. See *id.* (explaining that summary disposition is also appropriate when the moving party submits affirmative evidence that negates an essential element of the nonmoving party's claim).

On appeal, plaintiff frames the duty at issue as whether Mid-Valley failed to procure insurance coverage requested by plaintiff, and asserts that no expert testimony was necessary to determine whether Mid-Valley breached this duty. Fatal to this argument is that no evidence tended to establish that plaintiff asked Mid-Valley to add the F-350 to his policy. Thus, accepting plaintiff's contention that the duty at issue was whether Mid-Valley failed to procure insurance coverage requested by plaintiff, the trial court still reached the correct result because there is no

---

[5] On appeal, plaintiff emphasizes that he "pled that Mid-Valley had a duty to take all necessary steps to ensure continued coverage for Plaintiff's automobiles based on a change of circumstances, i.e[.] maintaining existing insurance coverage for a newly purchased vehicle." This only reinforces the trial court's ruling that expert testimony was necessary to sustain plaintiff's claim. Mid-Valley undisputedly took steps to "ensure continued coverage for Plaintiff's automobiles" after he purchased the F-350 by calling plaintiff and leaving a voicemail, making the question not whether Mid-Valley took steps to ensure continued coverage but whether the steps that Mid-Valley took were sufficient to satisfy its duty to plaintiff. It is unclear how a layperson could make this determination without expert assistance.

evidence that tends to establish that plaintiff asked Mid-Valley to procure insurance for the F-350, and thus no question of fact that Mid-Valley did not breach this duty.[6]

Affirmed.

/s/ Anica Letica
/s/ Jane E. Markey
/s/ Colleen A. O'Brien

---

[6] In his brief on appeal, plaintiff cites to his testimony that Kyle "made an admission as to negligence (duty) when stating that [he] had 'dropped the ball,' " and Mid-Valley responds that plaintiff takes plaintiff's testimony about what Kyle said out of context. It is true that, at various points throughout his deposition, plaintiff testified that Kyle told him that he "dropped the ball," but it is entirely unclear what plaintiff was saying that Kyle admitted to "dropp[ing] the ball" about. What is clear is that plaintiff never testified that he asked Kyle to add the F-350 to his policy before the accident and Kyle said that he "dropped the ball" by not doing so. More importantly, plaintiff does not explain how his testimony that Kyle admitted to "dropp[ing] the ball" would create a question of fact for trial because plaintiff still lacks any expert testimony to establish a question of fact whether Mid-Valley breached a duty owed to plaintiff.