*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

AHMED ALSHAMMAM,

        Plaintiff-Appellant,

v

HOME-OWNERS INSURANCE COMPANY,

        Defendant-Appellee,

and

DIAMOND ANGELICA SMITH,

        Defendant.

UNPUBLISHED
April 27, 2023

No. 361218
Wayne Circuit Court
LC No. 19-010072-NI

Before: M. J. KELLY, P.J., and SWARTZLE and FEENEY, JJ.

PER CURIAM.

Plaintiff, Ahmed Alshammam, appeals as of right from the trial court order granting his motion for default judgment against defendant, Diamond Smith. On appeal, Alshammam challenges the trial court's earlier order dismissing his claims against defendant, Home-Owners Insurance Company, as a sanction for his failure to attend multiple defense medical examinations (DMEs).[1] He also argues that the trial court erred by denying his motion for relief from judgment. Because the trial court did not abuse its discretion in dismissing his claims as a sanction and by denying his motion for relief from judgment, we affirm.

---

[1] Although the parties refer to the medical examination as an "independent" medical examination or an IME, this opinion will refer to it as a defense medical examination because it is an examination requested by the defense that is conducted by a medical examiner selected by the defense. See *Muci v State Farm Mut Auto Ins Co*, 478 Mich 178, 182; 732 NW2d 88 (2007) (stating that a medical examination requested by the defense is "customarily referred to as a defense medical examination or a DME").

## I. BASIC FACTS

On February 11, 2019, Smith rear-ended a truck, lost control of her vehicle, and spun into the center lane of traffic. Alshammam, who was traveling in the center lane, was unable to safely avoid Smith and collided with her vehicle. Alshammam alleges that he sustained multiple bodily injuries arising from that motor vehicle crash. He sought personal protection insurance (PIP) benefits and uninsured/underinsured motorist (UN/UIM) benefits from his automobile insurer, Home-Owners. When the benefits were not timely paid, he filed a claim against Home-Owners, alleging that it had unreasonably refused to pay him PIP benefits under the no-fault act, MCL 500.3101 *et seq.*, and UN/UIM benefits under the terms of his insurance policy.

During discovery, Home-Owners filed interrogatories, requests for admissions, and requests for the production of documents. Later, it moved the trial court to compel Alshammam to answer the interrogatories and the requests for admission and the production of documents. After Home-Owners filed the motion to compel, Alshammam responded to the requests for admission. Thereafter, Home-Owners requested that Alshammam appear for a DME on November 13, 2019, by filing a notice of an DME with the trial court. However, Alshammam did not attend. Rather, less than 30 minutes before the scheduled examination, he informed Home-Owners that he was at a neuropsychological examination and that the examination would have to be rescheduled. Home-Owners incurred a $350 no-show charge. Home-Owners rescheduled the DME for December 9, 2019, and filed its first re-notice of the DME with the trial court. Alshammam once again failed to attend, and Home-Owners incurred a second $350-no-show charge as a result.

After Alshammam failed to appear for both noticed DMEs, Home-Owners moved to compel him to appear for an DME and to reimburse Home-Owners for the $700 in no-show charges. Additionally, Home-Owners filed a second re-notice of DME, requesting that Alshammam be present for a DME scheduled for January 23, 2020. Finally, in a supplement to its motion to compel, Home-Owners requested that the court enter an order compelling Alshammam to appear for a deposition by February 17, 2020. Home-Owners explained that after it had filed its initial motion to compel, Alshammam unilaterally cancelled his scheduled deposition. In response, Alshammam requested that the court deny the motion to compel. He admitted that he had not attended the two scheduled DMEs, but he asserted that he was unable to do so because he had a neuropsychological examination on the first scheduled date and because he had to meet with his case manager on the second scheduled date. He complained that Home-Owners was "arbitrability" scheduling the DMEs despite Alshammam's lawyer's requests to Home Owners that the examinations be mutually scheduled to ensure that Alshammam would be available and would attend. The trial court granted Home-Owners' motion and entered an order compelling Alshammam to appear for all future DMEs, to appear for a deposition, and to reimburse Home-Owners $700 for no-show charges incurred by Alshammam's failure to attend the DMEs.

Following the entry of the court's order, Alshammam appeared for a DME on January 23, 2020. Based on the examination, the defense medical examiner concluded that case management, attendant care, and replacement services would not have been required as a result of the motor-vehicle crash, and that only three to four months of physical therapy would have been reasonable. Based on that determination, Home-Owners terminated Alshammam's benefits on July 28, 2020, and informed him that all benefits sought after June 11, 2019 would be denied. Later, Home-

Owners requested Alshammam attend two additional DMEs before two different medical examiners on September 16, 2020, and October 21, 2020, respectively. However, notwithstanding the court order directing him to appear for all future DMEs, Alshammam failed to appear for both DMEs.

Home-Owners moved to dismiss Alshammam's complaint for discovery violations. The trial court granted the motion and dismissed Alshammam's case, concluding Alshammam's failure to appear at four DMEs without an adequate explanation, "combined with other instances when [Home-Owners] had to obtain a court order to compel discovery, demonstrate that [Alshammam] has willingly disregarded his obligation to participate in this suit." The trial court found dismissal was an appropriate sanction. Alshammam moved for relief from the order dismissing his case as a discovery sanction. The trial court treated his motion as a motion for reconsideration and denied it. This appeal follows.

## II. DISMISSAL AS A SANCTION

### A. STANDARD OF REVIEW

Alshammam argues that the trial court abused its discretion by dismissing his claim as a sanction for his failure to appear for four schedule DMEs. The trial court's decision to dismiss a claim as a sanction for a party's failure to comply with discovery is reviewed for an abuse of discretion. *Hardrick v Auto Club Ins Ass'n*, 294 Mich App 651, 659; 819 NW2d 28 (2011). "An abuse of discretion occurs when the decision is outside the range of principled outcomes." *Id*. "Any factual findings underlying the trial court's decision are reviewed for clear error." *Gueye v State Farm Mut Auto Ins Co*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 358992); slip op at 7. *Id*. "A finding is clearly erroneous when this Court is left with a definite and firm conviction that a mistake has been made." *Id*. (quotation marks and citation omitted).

### B. ANALYSIS

MCL 500.3151(1) provides that "[i]f the mental or physical condition of a person is material to a claim that has been or may be made for past or future [PIP] benefits, at the request of an insurer the person shall submit to mental or physical examination by physicians." If an insured fails to comply with a request for a DME under MCL 500.3151(1), the insurer may ask the court to sanction the insured for his or her refusal. See MCL 500.3153. Specifically, MCL 500.3153 provides:

> A court may make such orders in regard to the refusal to comply with sections 3151 and 3152 as are just, except that an order shall not be entered directing the arrest of a person for disobeying an order to submit to a physical or mental examination. The orders that may be made in regard to such a refusal include, but are not limited to:
>
> (a) An order that the mental or physical condition of the disobedient person shall be taken to be established for the purposes of the claim in accordance with the contention of the party obtaining the order.

(b) An order refusing to allow the disobedient person to support or oppose designated claims or defenses, or prohibiting him from introducing evidence of mental or physical condition.

(c) An order rendering judgment by default against the disobedient person as to his entire claim or a designated part of it.

(d) An order requiring the disobedient person to reimburse the insurer for reasonable attorneys' fees and expenses incurred in defense against the claim.

(e) An order requiring delivery of a report, in conformity with section 3152, on such terms as are just, and if a physician fails or refuses to make the report a court may exclude his testimony if offered at trial.

Thus, under MCL 500.3153, the court has the discretion to impose sanctions for an insured's failure to attend a DME, including the dismissal of the insured's claim under the no-fault act. *Muci v State Farm Mut Ins Co*, 478 Mich 178, 188-189; 732 NW2d 88 (2007). Yet, any sanctions imposed must be "just." *Gueye*, ___ Mich App at ___; slip op at 10-11. To determine if the sanction is just, the trial court must consider "a range of factors." *Id*. And, before "dismissing a no-fault claim under MCL 500.3153, the trial court should "carefully consider all available options on the record and conclude that the sanction of dismissal is just and proper." *Id*. at ___; slip op at 11.

As explained in *Gueye*, that requires the trial court to consider the applicable factors set forth in *Vicencio v Ramirez*, 211 Mich App 501; 536 NW2d 280 (1995). *Gueye*, ___ Mich App at ___; slip op at 11. In *Vicencio*, this Court set forth the following nonexhaustive list of factors that must be considered before imposing the drastic sanction of dismissal:

(1) whether the violation was wilful or accidental; (2) the party's history of refusing to comply with previous court orders; (3) the prejudice to the opposing party; (4) whether there exists a history of deliberate delay; (5) the degree of compliance with other parts of the court's orders; (6) attempts to cure the defect; and (7) whether a lesser sanction would better serve the interests of justice. [*Vicencio*, 211 Mich App at 507, citing *Dean v Tucker*, 182 Mich App 27, 32-33; 451 NW2d 571 (1990).]

In doing so, the court must explain its reasons for the dismissal on the record "in order to allow for meaningful appellate review." *Gueye*, ___ Mich App at ___; slip op at 11, quoting *Kalamazoo Oil Co v Boerman*, 242 Mich App 75, 88; 618 NW2d 66 (2000). Thus, regardless of whether the trial court is contemplating dismissal as a sanction under MCL 500.3153 or as a sanction under the court rules—see MCR 2.313(B)(2)(c)—for failing to comply with discovery order, the court must consider the *Vicencio* factors. See *Maldonado v Ford Motor Co*, 476 Mich 372, 375; 719 NW2d 809 (2006) (affirming that trial courts have the authority "to impose sanctions appropriate to contain and prevent abuses so as to ensure the orderly operation of justice."); and *Kalamazoo Oil Co*, 242 Mich App at 86 (recognizing that the court rules authorize the dismissal of a claim as a sanction against individuals who fails to obey orders to provide discovery). Accordingly, in this case, although Alshammam has claims both under the no-fault act and under the terms of his insurance policy with Home-Owners, the analysis as to whether the trial court abused its discretion

by imposing dismissal of his claims as a sanction is the same. Indeed, in its motion seeking dismissal as a sanction, Home-Owners cited MCL 500.3153(c), MCR 2.313(B), and MCR 2.504(B)(1).

Alshammam argues that the trial court abused its discretion because it dismissed his UM/UIM claims when Home-Owner's motion to dismiss was based solely on his claim for PIP benefits. However, Home-Owners sought dismissal of both the PIP claim under the no-fault act and the UM/UIM claim under the insurance contract as a sanction for Alshammam's failure to appear at the DMEs. Moreover—as explained below—the same legal framework is applicable to dismissals as a sanction under the no-fault act and dismissals as a sanction under the court rules for failure to comply with discovery requests. Consequently, the trial court was not required to separately analyze the PIP claim and the UM/UIM claim.

Next, Alshammam argues that the trial court abused its discretion by dismissing his claims as a sanction for his failure to appear at the DMEs. We disagree. In its written opinion, the trial court considered Alshammam's history of failing to comply with requests for DMEs. The court noted that Home-Owners filed a motion to compel Alshammam's appearance at a DME after he failed to appear for two scheduled DMEs. Indeed, rather than immediately seeking dismissal as a sanction for Alshammam's failure to comply with the requests for DMEs, Home-Owners requested an order compelling him to appear for a DME scheduled for January 23, 2020 and to comply with all future DMEs. Home-Owners also sought reimbursement for the $700 in no-show charges that it had incurred. In response to the motion to compel, the trial court granted Home-Owners the requested relief and entered an order compelling Alshammam to appear for the scheduled DME, to appear for a deposition, and to reimburse Home-Owners for the no-show charges.

It was only after Alshammam failed to appear for two more DMEs that the court considered, at the request of Home-Owners, the drastic sanction of dismissal of the claim. In his response to the motion to dismiss, Alshammam repeated his explanations for missing the first two DMEs, and he asserted that he should not have to attend the additional DMEs because his benefits had already been terminated based on the results of the DME that the trial court compelled him to appear for. He argued that dismissal was too harsh of a sanction because he only missed the first two DMEs by accident. However, the court found that the credibility of Alshammam's claim was undermined by the lack of specifics involving why Alshammam missed those DMEs.[2] Additionally, the court found that Alshammam had not offered any explanation for why he had failed to attend the last two DMEs. Moreover, although Alshammam argued that Home-Owners had no need for the last two DMEs, he did not accompany that argument with anything suggesting that his injuries do not fall within the scope of the examining physicians' areas of expertise. Nor did he object to the DMEs. Instead, as found by the trial court, he simply failed to appear without notice or explanation. The court next found that in addition to the circumstances surrounding Alshammam's failure to attend four DMEs, Home-Owners also had to obtain court orders to

---

[2] In response to Alshammam's motion for relief from judgment, the trial court elaborated that Alshammam explained his absence by claiming that he had another appointment on both days, without providing any specific details showing that his attendance at those appointments would have precluded his attendance at the DMEs.

compel discovery on other matters. Indeed, the record reflects that Alshammam had to be ordered to appear for his deposition and that he only complied with Home-Owners interrogatories, requests for admissions, and requests for the production of documents *after* Home-Owners filed a motion to compel discovery. The court found that the record, as a whole, therefore, demonstrated that Alshammam had *willfully* disregarded his obligations to participate in the lawsuit. Finally, after considering all of the above facts and circumstances, the court found that dismissal was an appropriate sanction "in this context."

Although the court did not expressly go through each of the *Vicencio* factors, its statement of the facts, consideration of the arguments raised by Alshammam—including his argument that dismissal was too drastic of a sanction—are sufficient to allow for meaningful appellate review.

First, the court found that the violation of the request for Alshammam to appear for four DMEs was willful, not accidental. See *Vicencio*, 211 Mich App at 507. As noted above, this was based on Alshammam's cursory and unsupported excuses for missing the first two DMEs, his unexplained failure to appear for the last two DMEs, and his history of not complying with discovery requests, which had led to Home-Owners filing multiple motions to compel discovery. Second, the court noted Alshammam's history of refusing to comply with previous court orders. See *id*. The record, after all, reflects that after Alshammam was ordered to appear for all future DMEs, he failed—without notice or explanation—to appear for two additional DMEs. The court considered the prejudice to the opposing party. See *id*. In doing so, the court found that Home-Owners incurred no-show charges and, because Alshammam was not appearing for the DMEs, Home-Owners was being precluded from investigating the extent of Alshammam's injuries. Moreover, although the court did not use the term "deliberate delay," see *id*., the court found that Alshammam had not proferred any notice or explanation for failing to appear for the last two DMEs and that it was only two months after the last missed DME that Alshammam suggested that he might be objecting to the need for the last two DMEs. The court recognized that Alshammam had complied with parts of the courts orders. See *id*. Specifically, Alshammam complied with the court order directing that he appear for the DME scheduled for January 23, 2020. Next, Alshammam did not attempt to cure the defect caused by missing the last two DMEs. See *id*. As recognized by the trial court, his failure to appear at the last two DMEs was without notice or explanation, and it was only two months after the last DME was scheduled that he suggested he might have an objection to the last two DMEs.[3]

Alshammam argues that the trial court failed to consider whether a lesser sanction would better serve the interests of justice. In *Vicencio*, this Court held that the trial court's failure to place its reasoning and consideration of alternative sanctions on the record is an abuse of discretion. *Vincencio*, 211 Mich App at 507 ("Before imposing [dismissal], the trial court is required to carefully evaluate all available options on the record and conclude that the sanction of dismissal is

---

[3] On the other hand, at least with respect to the first two DMEs, the record reflects that Alshammam's lawyer attempted to work with Home-Owners to schedule a DME at a mutually agreed time. Thus, initially, he made some effort to cure. The fact that those efforts do not appear to have continued after he appeared for the first court-ordered DME is, however, a factor weighing in favor of the court's determination that dismissal was warranted.

just and proper."). However, the court's opinion and order expressly noted that lesser sanctions had, in fact, been imposed based on Alshammam's failure to attend the first two DMEs. Again, the court entered an order compelling Alshammam to attend a DME scheduled for January 23, 2020, to appear for his deposition, and to attend all future DMEs. As a sanction for the failure to comply with the requests for the DMEs, the court ordered him to reimburse Home-Owners for the no-show charges. Despite that lesser sanction being imposed, and despite the existence of a court-order, Alshammam failed to attend two additional DMEs. Thus, it was only after considering the relevant facts and circumstances that the court found that dismissal was an appropriate "sanction in this context." Although the court could have provided a more detailed analysis as to why the lesser sanctions were not appropriate, the court's actual imposition of lesser sanctions, and its decision only to impose the drastic sanction of dismissal in light of Alshammam's continued non-compliance, was not an abuse of discretion.

## III. EQUITABLE ESTOPPEL/MEND-THE-HOLD DOCTRINE

### A. STANDARD OF REVIEW

Alshammam next argues that the trial court should have found that the doctrine of equitable estoppel precluded Home-Owners from seeking additional DMEs after it sent him correspondence terminating his benefits. We review de novo whether equitable relief is proper. *McDonald v Farm Bureau Ins Co*, 480 Mich 191, 197; 747 NW2d 811 (2008).

### B. ANALYSIS

"Equitable estoppel is not an independent cause of action, but instead a doctrine that may assist a party in precluding the opposing party from asserting or denying the existence of a particular fact." *Conagra, Inc v Farmers State Bank*, 237 Mich App 109, 140-141; 602 NW2d 390 (1999). The elements of equitable estoppel may arise where "(1) a party by representation, admissions, or silence, intentionally or negligently induces another party to believe facts; (2) the other party justifiably relies and acts on this belief; and (3) the other party will be prejudiced if the first party is permitted to deny the existence of the facts." *Williamstown Twp v Sandalwood Ranch, LLC*, 325 Mich App 541, 553; 927 NW2d 262 (2018) (quotation marks and citation omitted).

Alshammam contends he was induced to believe his present medical condition was no longer relevant, and as a result, additional DME's were no longer required based on a July 28, 2020 correspondence notifying him that Home-Owners terminated payment for benefits on June 11, 2019. However, Alshammam fails to point to language in the correspondence that would have reasonably led him to believe his appearance at future DME's was no longer required. Rather, the correspondence states that "[a]ll rights, terms, conditions, and exclusions in the insurance code are in full force and effect and are completely reserved." And, under MCL 500.3151(1), at the request of Home-Owners, Alshammam was required to submit to mental or physical examinations by physicians so long as his mental or physical condition was material to his claim for benefits under the no-fault act. Thus, contrary to Alshammam's argument, the language in the correspondence specifically stated provisions of the insurance code, including MCL 500.3151, were still in effect. Indeed, notwithstanding the denial of benefits, Alshammam was still maintaining a suit against Home-Owners for nonpayment of benefits. As a result, Alshammam was not justified in assuming additional DME's were no longer necessary.

Alshammam also asserts the only reason for additional DMEs would have been for Home-Owners to "pivot" and rely on an alternative basis for denying Alshammam's claim for benefits, and therefore, the mend-the-hold doctrine applies. Our Supreme Court explained the mend-the-hold doctrine as follows:

> Where a party gives a reason for his conduct and decision touching any thing involved in a controversy, he cannot, after litigation has begun, change his ground, and put his conduct upon another and a different consideration. He is not permitted thus to mend his hold. He is estopped from doing it by a settled principle of law. [*CE Tackles, Inc v Fantin*, 341 Mich 119, 124; 67 NW2d 71 (1954) (quotation marks and citation omitted).]

The mend-the-hold doctrine has been applied in the insurance context. *Smith v Grange Mutual Fire Ins Co of Mich*, 234 Mich 119, 122-123; 208 NW 145 (1926). Under the doctrine, "once an insurance company has denied coverage to its insured and stated its defenses, the insurer has waived or is estopped from raising new defenses." *Michigan Twp Participating Plan v Federal Ins Co*, 233 Mich App 422, 436; 592 NW2d 760 (1999). Yet, "the doctrine's applicability is limited to only those defenses that are based on the terms of the policy." *Childers by Childers v Progressive Marathon Ins Co*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 356915); slip op at 5. "[T]he purpose of the doctrine is to prevent an insurance company from misleading an insured about the reasons for denying coverage under the terms of a policy. In those circumstances, the insurer is estopped from advancing new theories for denying coverage under the policy's provisions[.]" *Id*. Here, Home-Owners has not changed or raised new defenses to deny his coverage during the litigation. Instead, Home-Owners closed its investigation into Alshammam's claims for benefits, and therefore, there were no longer any questions relating to his injuries or the reasonableness of his postaccident treatment. However, Home-Owners was still defending against Alshammam's suit in the trial court, so his condition was still material to a claim for PIP benefits. As a result, Home-Owners' defense is not predicated on the terms of the insurance policy, but rather on the mental or physical condition of Alshammam for the payment of PIP benefits. Therefore, the trial court did not abuse its discretion when it failed to find Home-Owners should have been estopped from requiring additional DMEs.

We affirm. Home-Owners may tax costs under MCR 7.219(A).

/s/ Michael J. Kelly
/s/ Brock A. Swartzle
/s/ Kathleen A. Feeney

-8-